HIGGINS v. EATON.

(Circuit Court, N. D. New York. August 3, 1911.)

1. WILLS (§ 184*)—CONDITIONS—REVOCATION.
    A testator imposing a condition on a gift may by codicil expressly or impliedly remove the condition and leave the gift.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

2. WILLS (§ 184*)—LEGACIES—REVOCATION—SUBSTITUTION.
    A legacy may be revoked by substituting another gift in its place, either by express words or by plain implication.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

3. WILLS (§ 476*)—WILL AND CODICIL—CONSTRUCTION.
    A will and codicil must be construed together as parts of one instrument, and the dispositions of the will must not be disturbed further than is necessary to give effect to the codicil.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 997; Dec. Dig. § 476.*]

4. WILLS (§ 184*)—REVOCATION OF WILL BY CODICIL—CONSTRUCTION.
    A testatrix gave to her sister A. for life $100 a month, "provided and on condition that" she made a home for a mute brother, and provided that, if A. died before the brother, the executor should pay a sister B. $50 a month for caring for the brother for life. A codicil stated that it was testatrix's wish that her sister C. and her husband should care for her brother, and that they should receive $75 per month compensation, and declared that, in the event of his death before that of A. or C., they should share with the other heirs in the final distribution of the estate. Held, that the will and codicil when read together gave to A. $100 per month, though C. and h r husband cared for the brother; A. not having refused to care for the brother.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** JUDGMENT (§ 828*)—JUDGMENT OF STATE COURT—EFFECT IN FEDERAL COURT —COLLATERAL ATTACK—GROUNDS.

A federal court will not correct errors of a state probate court admitting to probate or rejecting a will of one dying domiciled within the territorial limits of the probate court, and one complaining of the decree of the probate court may only show that it acted without jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

**6.** WILLS (§ 2*)—DISTRIBUTION OF PERSONAL PROPERTY—WHAT LAW GOVERNS.

The provisions of a will of personal property may be valid in the state of testator's domicile while contrary to the laws of the state where the personalty is situated, and in that case the courts of the latter state will transfer the property to the state of testator's domicile for distribution in accordance with the will, and the will as established by the law of testator's domicile controls the distribution of the estate.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 2.*]

**7.** DESCENT AND DISTRIBUTION (§ 5*)—WHAT LAW GOVERNS.

Where a resident and citizen of one state dies intestate in another state leaving personal property therein, the courts of the latter state may issue letters and administer the estate, but the distribution must be made according to the laws of the state of the domicile.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 19–22; Dec. Dig. § 5.*]

**8.** WILLS (§ 22*)—TESTAMENTARY CAPACITY—WHAT LAW GOVERNS.

Where a testator domiciled in one state dies in another state while temporarily therein, and most of his personal property is in the latter state, the courts of testator's domicile alone have jurisdiction to determine testamentary capacity, and their judgments are conclusive on the courts of the other state.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 50; Dec. Dig. § 22.*]

**9.** APPEAL AND ERROR (§ 1097*)—SUBSEQUENT APPEALS—LAW OF THE CASE.

The decision of the Circuit Court of Appeals rendered on appeal from a judgment sustaining a demurrer to the bill in a suit by a legatee against the executor to establish and enforce rights under the will is the law of the case on a subsequent trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

**10.** WILLS (§ 222*)—CONTEST—NATURE OF PROCEEDINGS.

The contest of a will on the ground of testamentary incapacity is not an ordinary suit or action or proceeding between the parties, even where the contestants are interested and appear personally and raise the issue.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 542–544; Dec. Dig. § 222.*]

**11.** EXECUTORS AND ADMINISTRATORS (§ 2*)—WHAT LAW GOVERNS.

The controlling place of administration of a will of personal property and distribution under it is in the state of testator's domicile.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2, 562; Dec. Dig. § 2.*]

**12.** WILLS (§ 22*)—TESTAMENTARY CAPACITY—WHAT LAW GOVERNS.

A testatrix died domiciled in Michigan leaving personal property in the hands of an agent in New York, who had in his hands the will and codicil. He applied to a surrogate of New York for the probate of the will and codicil, and three of the persons interested in the estate appeared and contested the codicil on the ground of testamentary incapacity. The will was executed in New York, while the codicil was executed in Michigan according to its laws. The surrogate admitted both will and codicil to

probate. Subsequently the probate court in Michigan admitted the will to probate, but rejected the codicil for testamentary incapacity. *Held* that, in view of the law of New York that testamentary capacity to make a will is governed by testator's domicile, the decision of the surrogate was not binding, but the estate must be administered according to the will admitted to probate in Michigan without reference to the rejected codicil.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 22.*]

13. WILLS (§ 70*)—WILL OF REAL ESTATE—CONSTRUCTION.

A will of real estate must be executed in accordance with the law of the state where the real estate is situated, and must be valid under the laws of such state, and it is not enough that it is valid in the state of testator's domicile.

[Ed. Note.—For other cases, see Wills, Cent. Dig. 184–186; Dec. Dig. § 70.*]

14. JUDGMENT (§ 822*)—FOREIGN JUDGMENTS—CONCLUSIVENESS.

The full faith and credit clauses of the acts of Congress and of the federal Constitution (article 4, § 1) do not require that any more force shall be given to the judgment of a state court than the law or custom of the state where pronounced gives it or demands.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1496–1500; Dec. Dig. § 822.*

Giving full faith and credit, jurisdiction of federal courts, see note to Bailey v. Mosher, 11 C. C. A. 318.]

15. WILLS (§ 434*)—PERSONAL PROPERTY—ADMISSION TO PROBATE—JURISDICTION.

The probate or rejection of a will of personal property by the courts of a state other than that of the domicile of the testator has no effect on distribution as against a decree of the court of testator's domicile, where the distribution must be made according to the law of the domicile.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 937–945; Dec. Dig. § 434.*]

16. WILLS (§ 211*)—PROBATE—PRODUCTION OF WILL—JURISDICTION.

Under the statutes of Michigan requiring that a will sought to be probated shall be produced or its loss or destruction proved, the production of a will sought to be probated is not jurisdictional.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 518; Dec. Dig. § 211.*]

17. WILLS (§ 211*)—PROBATE—PRODUCTION OF WILL—JURISDICTION.

Where, in proceedings in Michigan to probate a will, under the statute requiring the production of a will or proof of its loss or destruction, the probate court provided for the taking of proofs by depositions, and proofs were taken and the will was produced before the person empowered to take depositions, the will was sufficiently produced in court to authorize the court to admit it to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 518; Dec. Dig. § 211.]

18. WILLS (§ 243*)—PROBATE—FOREIGN WILLS.

Comp. Laws Mich. §§ 9282, 9283, providing that a will admitted to probate in the place of testator's domicile may be admitted to probate and recorded in the state, and the will so admitted shall have the same effect as if originally proved in the state, do not provide for the recognition or record of the will of a person domiciled in Michigan and proved outside the state, but recognizes the rights of the courts of the domicile of testator to conclusively determine the validity of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 573–576; Dec. Dig. § 243.*]

In Equity. Suit by Susan C. Higgins against Hervey E. Eaton, as executor of the estate of Elizabeth S. Eaton. Decree for complainant. See, also, 183 Fed. 388, 105 C. C. A. 608.

This is an action tried before the court and brought by the plaintiff, Susan C. Higgins, to recover or have it determined that she is entitled to recover and receive from the estate of Elizabeth S. Eaton, deceased, the sum of $100 per month for and during the term of her natural life, provided, etc., as a legacy or bequest given her by the last will and testament of said Elizabeth S. Eaton, and to which she claims she is entitled. The defendant denies that she is entitled to such legacy or to any part of same. The essential facts will be stated in the opinion.

A. F. & F. M. Freeman (B. M. Thompson, of counsel), for complainant.

Carlos J. Coleman and Edwin H. Risley, for defendant.

RAY, District Judge (after stating the facts as above). Elizabeth S. Eaton, the testatrix, died at Ann Arbor, Washtenaw county, state of Michigan, of which state she was a resident and a citizen both at the time of the making of her last will and testament and alleged codicil thereto, and at the time of her death on the 17th day of May, 1906. She left her surviving two brothers, Edward Storms and George Albert Storms, and four sisters, Susan C. Higgins, the complainant, Genevieve S. Jacobs, Leah S. Kersey, and Pamelia S. Dickinson, and also a niece Lizzie Lusher, the only child of a predeceased sister. Said testatrix left a small amount of personal property at the place of her said residence and domicile, Ann Arbor, Mich., but something like $50,000 in personal property in the hands of Hervey E. Eaton, her friend, agent, and business man who resided at Eaton, Madison county, N. Y. He also had the possession and custody of her papers, or some of them, including her last will and testament and an alleged codicil thereto. On the 29th day of May, 1906, said Hervey E. Eaton executed a petition according to the laws of the state of New York for the proof of the last will and testament of said Elizabeth S. Eaton and of the two codicils thereto, the will being dated October 31, 1901, and the codicils March 19, and March 31, 1906, respectively. This petition alleged that the said testatrix "was at and immediately previous to her death a resident of the county of Washtenaw and state of Michigan, and that said last will and testament relates to personal property only." This petition was filed in the Surrogate's Court of the county of Madison, N. Y., on the 28th day of May, 1906, and a citation in due form was issued for service on all the heirs at law and next of kin to said deceased, returnable July 16, 1906. The will itself, dated October 31, 1901, was executed at Eaton, Madison county, N. Y., and witnessed by said Hervey E. Eaton and Olivia C. Eaton, his wife. The codicil of March 31, 1906, in question here, was executed at Ann Arbor, Mich., according to the laws of that state and was witnessed by Thomas W. Young and Sarah L. Ptolemy who also witnessed a

"memorandum" in the nature of a codicil dated March 12, 1906. By the will proper she gave to the Young Men's Christian Association $300, to said Hervey E. Eaton three family portraits in oil, to certain nieces, five in number, and to James Harry Lusher, $500 each, or in all $3,000. She also authorized her executor to place a memorial window in the Central Baptist Church at Syracuse, N. Y., at a cost of not to exceed $300. The will then contained these provisions:

"Sixth. I give and bequeath to my sister Susan C. Storms, during the term of her natural life, from the income of my estate, one hundred dollars per month, provided and on condition that she cares for and makes a home for my mute brother George Albert Storms during his life time.

"Seventh. Should my sister Susan C. Storms die before my brother George Albert Storms, then and in that case I hereby direct and empower my said executor to pay to my sister Leah Catherine Kersey, from the income of my estate the sum of fifty dollars per month for caring for and making a home for my said brother George Albert Storms during his life time, and in case said George Albert Storms should survive both Susan C. Storms and Leah Catherine Kersey then my said executor is hereby authorized and directed to make other suitable and sufficient arrangements for such care and home and to pay for the same."

Susan C. Storms thereafter married, and her name became Higgins. The will proper then after the death of Susan C. Storms and George Albert Storms gave to Rachel P. Dickinson $1,000, the legacy to lapse in case she did not survive Susan C. and George A. Also after the death of Susan C. and George A. she gave $1,300 to the treasurer of the Baptist Church of Ann Arbor for the Baptist Home Missionary Society and the Baptist Foreign Missionary Society. Also after the death of Susan C. and George A. and the payment of such legacies, she directed her residuary estate to be divided as follows: "Equally to my sisters Leah Catherine Kersey and Genevieve Jacobs and my brother Edwin J. Storms subject to" the conditions that, should Leah Kersey die before final distribution, her share should be paid to her daughter Margaret E. and from the share of Edwin J. $300 was to be deducted and from that of Genevieve $1,000. The codicil of March 31, 1906, provided as follows:

"Whereas, my brother George A. Storms is unable to care for himself through physical defects and infirmities, it is my wish that my sister Genevieve S. Jacobs and her husband Nathaniel P. Jacobs do so care for him and make his home with them during the term of his natural life and that they shall receive the sum of seventy-five dollars ($75) per month compensation during that time. In the event of his death before that of Genevieve S. Jacobs or Susan S. Higgins I direct that they shall share alike with the other heirs, in the general and final distribution of my estate.

"Also that any and all property not mentioned in my will is to go to Genevieve S. Jacobs subject to the memorandum annexed to this document."

The "memorandum" is not material to this controversy.

One claim of the complainant is that the codicil, if valid, does not revoke the sixth clause of the will, and that therefore she is entitled to the $100 per month in any event. The other claim is that the codicil is invalid and has not been proved or probated in Michigan, but refused probate there, and that the judicial action of the probate court in Michigan, the place of the actual residence and domicile of the testatrix, determines what her will was and is and controls

in the distribution of the estate. I will dispose of the question of revocation first. The gift of $100 per month from the income of the estate to Susan C. Storms, now Higgins, is on the express proviso and condition that she cares for and makes a home for her mute brother George Albert Storms during his lifetime. Prima facie this is intended to be by way of compensation for such care, etc., of said brother. It will be noticed that, while there are gifts to nieces, there is no gift to either brother or to either sister until after the death of Susan C. and George A. by the will proper when after satisfying certain legacies to nieces the residuary estate is to be divided between the brother Edwin J. and the sisters Leah and Genevieve. By the seventh clause, if Susan C. dies before the death of George Albert, Leah Catherine was to care for said George A. and receive $50 per month for so doing. These provisions together indicate plainly that the $100 per month during life to Susan C. was not as compensation to her only for caring for George A., but as a gift in addition.

[1] It was competent and within the province of the testatrix to revoke or remove the condition on which Susan C. was to receive the $100 per month for life and leave the gift. This could have been done by express words in which case no doubt would exist, and the gift would stand notwithstanding the provisions of the codicil. But there are no express words to this effect. Clearly the codicil removes the condition to an extent as the codicil makes express provision for the care of George A. otherwise.

[2] A gift or legacy given in a will may be revoked by substitution; that is, by substituting another gift in place of it. When this is done by express words, there is no doubt, and the original provision making the gift is revoked by the substitution. It may be done by plain implication when that result and no other is shown by the will and codicil read together to be the plain and unquestionable intent or purpose of the testatrix. By the codicil, after providing that Genevieve S. Jacobs and her husband, Nathaniel P. Jacobs, are to care for said George A. during his natural life and receive $75 per month compensation for so doing during the said time, the testatrix continues:

."In the event of his (George A. Storms) death before that of Genevieve S. Jacobs or Susan S. Higgins, I direct that they shall share alike with the other heirs in the general and final distribution of my estate."

The testatrix evidently referred to the eleventh clause of the will which gives the residuary estate to Leah, Genevieve, and Edwin J. The codicil makes no provision whatever for the care of George A. Storms and the furnishing him a home in case he survives Genevieve S. Jacobs and Nathaniel P. Jacobs. The seventh clause provided for the contingency of the death of Susan C. before that of George A. I think we would do violence to the intent of the testatrix to conclude that she intended to release Susan C. Storms, now Higgins, from the obligation to care for George A. Storms, and give him a home in case he survived Genevieve S. Jacobs and Nathaniel P. Jacobs, or in case they should refuse to care for him and give him a home for the $75 per month.

In the seventh clause of the will it is provided that, in case George A. should survive both Susan S. and Leah C., the executor should make suitable provision for him elsewhere, but we find no such provision in the codicil. Again, the codicil expressly provides that, in case George A. dies before the death of either Genevieve S. or Susan C., they are to share in the general and final distribution, indicating that then, in that event, both will be relieved from further care and obligation in the matter of caring for George A., and not before. The main objection to this construction is that it gives Susan C. $100 per month for life and also a share in the residuary estate. The provision of the codicil is inconsistent with the provisions of the eleventh clause of the will in a way. By the said eleventh clause the final and general distribution of the estate is to be made after the death of both. Susan C. and George A., and by the codicil in case Susan C. survives George A. she, not her descendants, etc., are to share in the final and general distribution. She could not share as she would be dead. I am impressed with the idea that the testatrix intended by the codicil to impose on Mrs. and Mr. Jacobs the care of George A. during his life in case they or either of them survived him, and to remove the burden from Susan C. while they so cared for him, but did not intend to revoke the gift of $100 per month to Susan C. as the codicil does not so state in terms or by necessary implication, and it seems plain, too, that the testatrix did not intend to release Susan C. from such obligation absolutely—that is, absolutely remove the condition—but intended that in case Mr. and Mrs. Jacobs refused or failed to care for George A., or died before his death, to leave the condition of the gift of $100 per month to Susan C. in full force. On this question, assuming the validity of the codicil, it is the duty of the court to read the two instruments together giving preference to the later expressions of the testatrix and force thereto, and rejecting former provisions found in the will when plainly inconsistent with the later provisions. After the making of the will, but prior to the execution of the codicil, Susan C. Storms married a widower with three children. There is no evidence that this in any way estranged the testatrix or affected her feelings towards Susan C. It did as matter of course change the situation in life of Susan C. and the testatrix may have thought it would be unpleasant for Susan C. to have George A. in the family, or she may have thought it would be unpleasant to George A. to be in a family with children. We may speculate as to her thoughts on this subject, but it is mere speculation. The surmises and speculations of a court do not, or should not, revoke wills or definite provisions contained therein. If the testatrix intended to revoke clause 6 of her will, why did she not do so in terms?

In Schouler on Wills, §§ 409 (page 418), 437 (page 447), 438 (page 448), the law on this subject is thus stated:

"Sec. 409. Inclination against Revocation; Use of a Codicil. The courts incline to so construe doubtful cases as to preserve, wholly or in part, the contents of the prior will rather than pronounce for a total revocation by inference. Where, for instance, the later will only disposes of a portion of

the estate, they avoid the ill consequence of partial intestacy; and where the later paper is styled a codicil, they take this to mean that the intent was to amend and not repeal; and in either case the former will is treated as no more than pro tanto revoked. In other cases, perhaps, the context may justify a similar construction. But if the later will does not profess to be a codicil at all, and disposes moreover of the whole estate inconsistently with the earlier, a court would violate its duty not to hold that the earlier will was wholly revoked, unless the context supplied good reason for supposing that the testator otherwise intended.

"The intention to revoke may be collected from informal expressions, though not from ambiguous ones. And in case of doubt, provisions by a later will appear to be presumed additional and cumulative, rather than intended as a substitute and by way of revocation. * * *

"Sec. 437. Codicil Does Not Revoke Will Except so Far as Necessary. Many testamentary causes arise where the effect of one or more codicils upon a prior will has to be considered; and it is a fundamental maxim that no codicil shall revoke a prior will more than is absolutely necessary at all events to give its own provisions effect; unless it contains an express clause of full revocation. The decisions which turn upon this principle are very numerous and need not be stated at length; being quite prolix for the most part and involving the construction of language as variable as the details of mental intention.

"Even though the codicil should profess to make a different disposition of the whole estate, the principle above stated is the natural and controlling one. And words and expressions contained in the codicil may by construction restrict its operation. Thus, it is held that a declared purpose therein to alter the will in one or more stated respects, implies that it is not altered in other respects. And that a specific gift in a will is not revoked by a general gift in the codicil. And that a general expression in the codicil must be confined to its meaning in the will. And that a clear gift in the will is not revoked by doubtful expressions in the codicil. But all artificial rules like these should bend to the real intention of the testator, as gathered from the whole face of the paper, aided in doubtful cases by proof aliunde. * * *

"438. Later Provisions, Whether by Way of Substitution or Addition. Whether provisions under a later will or codicil are intended for substitution, or as something additional and cumulative to the gift by the earlier one, must be determined by comparing the instruments to discover their true intent. But in case of doubt an additional gift is presumed rather than revocation; unless, indeed, resort may be had to parol evidence outside the instruments for assisting the conclusion.

"In general, the different parts of a will, or of a will and codicil, should be reconciled if possible and receive a fair and consistent interpretation."

It is said that the gift of $100 per month to Susan C. Higgins during her life is made only provided and on the condition that she furnishes a home and cares for said George A. Storms, and that as she cannot comply with the condition, that having been removed and other provision made for his home and care, the gift fails necessarily. If the gift of $100 per month had been made as compensation for such care and home furnished George A., and so expressed, there would be great and irresistible force in the suggestion. But it is quite plain, as before stated, that the gift of $100 per month was not so intended. It is not so expressed. The seventh clause is differently worded, viz.:

"Should my sister Susan C. Storms die before my brother George Albert Storms, then and in that case I hereby direct and empower my said executor to pay to my sister Leah Catherine Kersey from the income of my estate the sum of fifty dollars per month for caring for and making a home for my said brother George Albert Storms during his life time, and in case," etc.

188 F.—60

Her compensation for the care and home is to be $50 per month, and we are hardly justified in assuming that it was regarded as worth $100 per month for Susan C. to furnish care and a home to George A. and only $50 per month for Leah Catherine to do the same thing. Then in the codicil the sum of $75 per month to Mrs. and Mr. Jacobs is fixed by the testatrix as "compensation" for caring for and furnishing a home to said George A. Storms. The conclusion is irresistible that the $100 per month to Susan C. was not compensation alone. As stated, the condition could be removed, released, and the gift left. The codicil does remove the condition in case Mrs. and Mr. Jacobs see fit to accept the care and responsibility of caring for and furnishing a home to said George A. Storms at the "compensation" named. I think the fair inference and conclusion much more reasonable and probable that it was the intent and purpose of the testatrix to leave the gift to Susan C. Storms unaffected, but release or remove the condition in case Mrs. and Mr. Jacobs accepted the trust and compensation of caring for George A. and so long as they did so, but no longer. I do not think the testatric intended to take the care of George A. Storms and the responsibility and duty of furnishing him a home from Susan C. Storms (Higgins) and cast it on or intrust it to a stranger or strangers in either of three events, all possible, viz., the refusal of Mrs. and Mr. Jacobs to accept and perform the trust and duty, or their death before that of George A. Storms, or their inability or consequent neglect by reason of infirmity or otherwise to discharge the trust. I do not think it was the purpose of the testatrix to discharge Susan C. from the trust or obligation to care for and furnish a home to George A. Storms in the event that for any reason Mrs. and Mr. Jacobs failed so to do. The codicil, if valid, simply qualifies the condition or proviso of the sixth clause of the will that Susan C. is to care for and furnish a home to George A. Storms. "The intention to revoke may be collected from informal expressions, though not from ambiguous ones. And in case of doubt provisions by a later will appear to be presumed additional and cumulative, rather than intended as a substitute and by way of revocation." Schouler on Wills, § 409 (page 419); 1 Williams' Executors, 167; Gordon v. Hoffman, 7 Sim. 29; Pilcher v. Hole, 7 Sim. 208; 1 Jarwin on Wills, 182.

[3] "A will and codicil must be taken and construed together as parts of one and the same instrument, and the dispositions of the will are not to be disturbed further than are necessary to give effect to the codicil." Hard et al. v. Ashley, 117 N. Y. 606, 23 N. E. 177; Crozier v. Bray, 120 N. Y. 366, 375, 24 N. E. 712; Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193; Newcomb v. Webster, 113 N. Y. 191, 196, 21 N. E. 77; Westcott v. Cady, 5 Johns. Ch. (N.Y.) 334, 9 Am. Dec. 306; Nelson v. McGiffert, 3 Barb. Ch. (N.Y.) 158, 49 Am. Dec. 170. This rule has been declared in most of the states, and there is no authority to the contrary.

In Newcomb v. Webster, supra, at page 196 of 113 N. Y., at page 78 of 21 N. E., the court said:

"It may be taken as a well-settled general rule that a will and codicil are to be construed together as parts of one and the same instrument, and that a codicil is no revocation of a will further than it is so expressed"—citing Westcott v. Cady, supra.

Also:

"But if, regarded as one instrument, it is found to contain repugnant bequests in separate clauses, one or the other, or both, must fail, and therefore the rule is that of the two the bequest contained in the later clause shall stand. The same principle applies with greater force where there are two distinct instruments relating to the same subject-matter. In such a case an inconsistent devise or bequest in the second or last instrument is a complete revocation of the former. But, if part is inconsistent and part is consistent, the first will is deemed to be revoked only to the extent of the discordant dispositions, and so far as may be necessary to give effect to the one last made. Nelson v. McGiffert, 3 Barb. Ch. [N. Y.] 158 [49 Am. Dec. 170]."

In Hard v. Ashley, supra, the court held:

"A will and codicil must be taken and construed together as parts of one and the same instrument, and the dispositions of the will are not to be disturbed further than are necessary to give effect to the codicil.

In Austin v. Oakes, supra, the court held:

"The doctrine that an earlier provision of a will is revoked by a later one or by a codicil repugnant thereto operates only so far as it is necessary to give the later provision effect; and so does not apply where it (the codicil or later provision) is absolutely void."

And in Crozier v. Bray, supra, the court said (page 375 of 120 N. Y., page 714 of 24 N. E.):

"If a will and codicil are plainly inconsistent, the latter must control to the extent necessary to give it full effect as the presumption in such a case is much stronger than in the case of a later clause in the same instrument. While a clear gift cannot be cut down by a doubtful expression still when a predominent purpose is apparent, but a doubt arises as to the method devised to effect that purpose, such a doubt should be so resolved as to accomplish the object of the testator by presuming that he intended a legal, and not an illegal, method."

[4] Applying these principles here, we find no words of revocation in the codicil, and nothing in the codicil inconsistent with the will itself except that as the gift of $100 per month to Susan C. Storms (now Higgins) is provided, and on condition that she "cares for and makes a home for my mute brother George Albert Storms during his lifetime," and the codicil says, "Whereas my brother George A. Storms is unable to care for himself through physical defects and infirmities, it is my wish that my sister Genevieve S. Jacobs and her husband Nathaniel P. Jacobs do so care for him and make his home with them during the term of his natural life and that they shall receive the sum of $75. per month compensation during that time"—we may guess or surmise that the testatrix intended to substitute a provision for the care, etc., of George A. Storms and by the clause following directing that, in the case of his death before that of Genevieve or Susan C., they should share in the estate, etc., substitute that gift in place of the $100 per month. And the testatrix immediately adds, as if conscious that this takes the care of George

A. from Susan C. and that perhaps it does away with the gift of $100 per month to her:

"In the event of his death before that of Genevieve S. Jacobs or Susan C. Higgins, I direct that they shall share alike with the other heirs in the general and final distribution of my estate."

That is, if he dies before either of them, they share in the distribution of the residuary estate which by the eleventh clause of the will is to be made after the death of both George A. and Susan C. Was this provision intended to accelerate the general and final distribution? The codicil does not so state. But, if the codicil revokes the $100 per month payment to Susan C. during her life, there would be no objection to such distribution, as no longer would there be any object in deferring final distribution. So again we are led to inquire was the provision by which Susan C. on the death of George A. was to share in the general distribution by way of substitution for the legacy or provision of $100 per month to Susan C.? We at once enter the field of surmise and conjecture. The intent is doubtful and the provisions are ambiguous so far as they are claimed to affect a revocation of the gift of $100 per month to Susan C. Here we have a gift based on a condition to be performed by the legatee. Later, by the codicil, the condition is changed as the duty and obligation imposed thereby is transferred to others provided those others see fit to assume it for a compensation, but not otherwise. The transference of the duty is expressed in the form of a wish, and its performance is not made obligatory. If not assumed by the party later named or they die before the duty is fully performed, the duty rests on the one first named, Susan C. Higgins, as otherwise the care of this brother incapable of caring for himself would pass to strangers. It is evident, I think, that the provisions of the codicil can be fully met and carried into effect without disturbing in any way the gift of $100 per month to the complainant, Susan C. Higgins. The testatrix had the right to let that provision stand in her will and add the provision that Susan C. should share in the general and final distribution of the estate. This, if effective (the final division being postponed until after her death), would give her more than the other sisters, but this the testatrix had the power and right to do. I am of the opinion that the final clause of the first subdivision of the codicil was intended as though it read, "In the event of his death before that of either Genevieve S. Jacobs or Susan C. Higgins, I direct that she shall share alike with the other heirs (brother and sisters named in the eleventh clause of the will) in the general and final distribution of my estate," although Genevieve was already named as one to share and the codicil is a mere duplication as to her so far as final distribution is concerned. If the codicil had not been made and George A. Storms had died before the death of the testatrix, the gift of $100 per month to Susan C. would have stood valid and effective. If the codicil had not been made and George A. had survived the testatrix one day, the same result would have followed. And the validity of that gift depended in no way on the action or election of George A. Storms. It was and is entirely immaterial so far as the validity of that bequest is concerned

whether George A. Storms elected to go with Susan C. or with Genevieve S. My conclusion is therefore that the will and codicil together, read together, and both conceded to be valid, give to Susan C. Higgins $100 per month even if Mrs. and Mr. Jacobs care for George A. Storms and thus relieve the complainant from that duty; she not having refused to care for him and provide him a home. This is contrary to my impressions on first reading the will and codicil and before giving them a careful analysis and examining the authorities applicable.

### Validity of the Codicil.

On the return of the citation in the Surrogate's Court of Madison county, N. Y., Susan C. Higgins, the complainant, Mrs. Kersey, and Mrs. Dickinson appeared in person or by attorney, not having been personally served in the state of New York, and filed objections to the proof and probate of the codicil on the ground of the mental incompetency of Elizabeth S. Eaton to make same. The issue thus framed was tried in said court, and on the 12th day of November, 1906, the surrogate of that county made his decision finding that the testatrix was competent to make and execute the codicil, and the will, codicil, and memorandum were admitted to proof and probate as the last will and testament of said Elizabeth S. Eaton, and a decree was entered accordingly and letters testamentary duly issued to Hervey E. Eaton, the executor therein named, who duly qualified and has acted as such in the state of New York ever since. As the testatrix left personal property in Madison county, N. Y., the surrogate and Surrogate's Court of that county, so far as the state of New York is concerned, had power and jurisdiction to take proof of such will and codicil and make a decree admitting it or them to probate and issue letters testamentary thereon by virtue of the statutes of the state of New York.

But that surrogate and court had no power or jurisdiction to take proof of such will and codicil, or of either, for the courts of Michigan, or which would bind them in any way or affect the rights of legatees or determine so far as the courts of Michigan are concerned the validity of either paper or whether executed by a person possessing the necessary mental capacity to make a will. This is not only elementary law but the fixed rule established and as held by the courts of New York, Michigan, most if not all the states of the United States, and by the Supreme Court of the United States. There is no controversy over this proposition. While the petition for the probate of this will was pending in the Surrogate's Court of Madison county, N. Y., with such objections on file and before any proof was taken, and on the 23d day of July, 1906, Susan C. Higgins, the complainant and Pamelia S. Dickinson and Leah C. Kersey. filed a petition in the probate court of Washtenaw county, Mich., for the proof and probate of the last will and testament of said Elizabeth S. Eaton. This was the place of her actual residence and domicile at the time of and for years prior to her death. The will itself with the codicil was in the hands of Eaton in New York state, and they were not taken to or produced in court in Michigan. A citation was issued

returnable August 15, 1906, and published as required by the laws of Michigan and served by mailing copies on all necessary parties. There is no record of an adjournment, and that proceeding was pending in the courts of Michigan, not dismissed. July 23, 1906, a petition was filed by Susan C. Higgins in the probate court of Washtenaw county for the appointment of a special administrator of the estate of Elizabeth S. Eaton, and letters were issued August 2, 1906, to one Clarkson. August 22, 1906, an inventory was filed in the same court by him. October 23, 1908, a petition was filed for the revival and continuance of the proceedings for the probate of the will of said Elizabeth S. Eaton in the probate court of Washtenaw county. November 9, 1908, that court made an order for the taking of depositions and depositions were taken. December 1, 1908, the probate court of said Washtenaw county, Mich., made an order or decree on such proofs admitting the will proper to probate, but rejecting and disallowing the codicil and memorandum on the ground of mental incompetency. That order or decree has not been opened, set aside, or reversed and the decree of the Surrogate's Court of Madison county, N. Y., was not appealed from. In the meantime and on the 18th day of January, 1907, some one who is uncertain filed an exemplified copy of the will, codicil, memorandum, and proceedings had in the Surrogate's Court of Madison county, N. Y., in the office of the probate judge, probate court, of Washtenaw county, Mich. No order or decree was made or entered by said court or the judge thereof admitting the will or codicil to probate at that time or in that connection, and no order or decree was ever made admitting the codicil to probate in that court. On the 6th or 8th day of April, 1907, the said probate court of Washtenaw county issued letters of administration on the estate of said Elizabeth S. Eaton to Willis L. Watkins, and he gave a bond as such administrator. It is well to mention here that the will in question is signed "Elizabeth S. Eaton, her true and correct name." The codicil is signed "Lizabeth Storms." Storms was her maiden name. The memorandum is signed, "Mrs. J. H. Eaton."

April 8, 1907, Willis L. Watkins as principal with S. W. Clarkson, who was such special administrator, and A. F. Freeman, executed a bond in the sum of $5,000, which was filed the same day in said probate court, which recites:

"Whereas the above bounden Willis L. Watkins has been appointed by the probate court of said county [county of Washtenaw] administrator with the will annexed of the estate of Elizabeth S. Eaton late of said county deceased, now," etc.

I find no evidence that this complainant had anything to do with this, or that the codicil or even the will had been proved or admitted to probate, and there is no order of that court to that purport or effect. At that time, however, an exemplified copy of the will, codicil, and memorandum and the other proceedings had in the Madison county, N. Y., Surrogate's Court had been placed on file by some one. No copy of any will or codicil was annexed to the letters. The petition of Susan C. Higgins for the proof of the will of Elizabeth S. Eaton in which Mrs. Dickinson and Mrs. Kersey

joined and which was executed July 21, 1906, and filed July 23d, as stated, set forth the making of the will of Elizabeth S. Eaton, dated October 31, 1901, but repudiated the codicil and memorandum by the following allegation in said petition contained, viz.:

"Your petitioner further represents that the said Elizabeth S. Eaton was not of sound and disposing mind at the time she signed and executed the papers attached to said will purporting to be a codicil and memorandum affecting the same," and also "and was of sound mind and under no restraint or undue influence whatever, as I am informed and believe except as to the making of said codicil and memorandum."

This repudiation of the codicil and memorandum has never been retracted or withdrawn by said Susan C. Higgins. No petition was substituted, and, when the proceedings were finally revived and continued, they were based on and proceeded on this petition and resulted in the proof of the will in Washtenaw county, Mich., and the rejection of the codicil and memorandum. The petition referred to a copy of the will as filed with the petition and to the codicil and memorandum attached. As the will and codicil had been propounded for probate in Madison county, N. Y., it cannot be doubted that copies were filed with the petition, although not found with the files. This petition with its allegations was on file at all times, and whatever action was taken subsequently by the probate court of Washtenaw county, Mich., was with reference to it. I find no evidence in this record that Susan C. Higgins ever assented to the codicil or memorandum as a part of the last will and testament of Elizabeth S. Eaton, or as valid instruments. It is not shown that she filed the transcripts from the Surrogate's Court of Madison county, N. Y., or assented thereto or took any action thereon or directed it to be done. No action was taken thereon by the probate court of Washtenaw county, and, if the grant of letters with will annexed can be construed as an adoption of all these instruments, it was not sanctioned by the complainant here, and was repudiated and canceled by that court itself which later admitted the will to probate, and rejected the codicil and memorandum. It must be presumed that court had jurisdiction and power to do what it did do and to make the decrees it actually made, and, if attacked, it must be by a direct proceeding in that court.

[5] This court cannot assume to correct its action if it has erred, inasmuch as the jurisdiction of the probate court of the county of Washtenaw, Mich., to prove the will of Mrs. Eaton and decide what paper or papers made up or constituted her will must be conceded and cannot be doubted. Its decrees were subject to such review as the statute of that state provides for, but jurisdiction in the matter being proved and conceded, the proceeding having been founded on a written petition with appropriate allegations and followed by process and notice and the taking of proofs and the entry of a decree, the record imparts absolute verity so far as this court, or any other court, except the appellate courts of Michigan, is concerned. The defendant here may show that the probate court of Washtenaw county acted without jurisdiction, but he cannot in this action establish a defense by showing it acted erroneously. We

come then directly to the question whether the decree of the Surrogate's Court of the county of Madison, N. Y., or that of the probate court of the county of Washtenaw, Mich., controls here in determining what the will of Elizabeth S. Eaton is, and what the rights of this complainant, Susan C. Higgins, are under it. On this question I am foreclosed, not only by my own decision in this matter (Watkins v. Eaton [C. C.] 173 Fed. 133, 138–147, affirmed by the Circuit Court of Appeals, Watkins v. Eaton, 183 Fed. 384, 105 C. C. A. 604), but by the decision of the Circuit Court of Appeals in this very case (Higgins v. Eaton, 183 Fed. 388, 105 C. C. A, 608, reversing Judge Hand in 178 Fed. [C. C.] 153).

It is, to my mind, intolerable to suppose that a testatrix may have two valid wills differing from each other—one good and controlling at the place of her residence and domicile at the time of and immediately preceding the date of her death, and the other, inconsistent therewith and contrary thereto, valid and controlling in the state where her personal property happened to be at the time of her death. Such a contention is contrary to reason and all settled authority.

[6] It is true that certain provisions of the will of a testator relating to personal property may be valid in the state of the domicile, but in some other state according to the law of that state invalid, or rather such as the courts of such other state will not enforce because contrary to some statute of the state, or some rule of public policy in regard to which it is tenacious, in which case the courts of such state will transfer the property to the state of the testator's domicile for distribution in accordance with the will, in most other cases the transfer being usually discretionary. Despard v. Churchill, 53 N. Y. 192. However, the will of the testator as established by the law of the testator's residence or domicile always controls the distribution of the estate. No state which has reached the degree of modern civilization assumes to dictate what is the will of a testator residing and domiciled in another state as against the courts of that state having jurisdiction, except so far as to protect creditors residing within its own jurisdiction, or to dictate the distribution of the personal property of such testator contrary to the terms of the will of such testator as established by the courts of the state of his actual residence and domicile on the ground that having the possession of the property it has the power to administer it and distribute it and therefore it will determine for itself the mental competency of the testator, the validity of the will, and who shall take the property under it. As to a will of real estate situate in a state other than that of the testator's domicile, the rule is different, but even then the court of the state where the property is situated does not assume to determine the question of the mental competency of the testator as against the courts of the state of his domicile.

[7] When a resident and citizen of another state dies intestate in New York, leaving personal property there, the courts of that state have power to issue letters and administer same, but not to distribute according to the laws of the state of New York. The laws of the state of the domicile in such matters govern and control the courts of such state.

[8] If a testator domiciled in Michigan, having a will executed there, dies in New York while temporarily there, and it so happens that most of his personal property is in New York at the time, it would seem contrary to a sense of justice for the New York courts to proceed to determine and adjudge that the testator was insane when the will was executed, and therefore void, and that he died intestate, and then proceed to distribute his personal property in accordance with the statutes of distribution of the state of New York, the courts of Michigan determining in the meantime that the testator was sane and competent to make the will, and that it is valid, and its statutes of distribution differing from ours. This would be determining with a vengeance that "He is right who has the might and he shall rule who can," a rule that prevailed in England centuries ago when the rule of physical power, and not "the rule of reason," prevailed.

In Watkins v. Eaton (C. C.) 173 Fed. 133, while the question was whether or not this court had power and jurisdiction to compel the executor Eaton, appointed by the courts of New York, to transmit and deliver the personal assets to Watkins, the administrator with the will annexed of the estate of Mrs. Eaton appointed by the probate court of Washtenaw county, Mich., this court, foreseeing what might arise, took occasion to point out (1) that in regard to the disposition of personal property wherever situated the will of the testatrix as established by the probate court of Michigan controls, and that the said court had power to determine what her last will and testament is; (2) that the will as there established and as by that court and the courts of Michigan interpreted must control the executor Eaton and the courts of New York in distribution, and the rights of Susan C. Higgins, this complainant, under it, unless she by coming to New York and contesting the codicil and not appealing from the adverse decision of the Madison County Surrogate's Court on the question of the validity of the codicil has become bound by the said decision and decree notwithstanding the adjudication by the probate court of Michigan to the contrary; (3) that the decision of the probate court of Michigan on the question of the mental competency of Mrs. Eaton to execute the codicil and memorandum controls.

Many of the leading and controlling authorities on these subjects were cited and quoted from. See pages 138 to 145, inclusive. It is unnecessary to repeat them here. Indeed, these decisions have been summarized and condensed and put in the form of a statute by the Legislature of the state of New York. Article 7, tit. 3, § 2694, Code Civ. Proc. This court, while dismissing the bill on the ground that application must be made to the Surrogate's Court of Madison county, and that the transfer of the assets to Michigan was discretionary (subject to review) with that court, also held, following the Supreme Court of the United States in numerous cases, that Susan C. Higgins or any other nonresident of the state with over $2,000 in question could come into this court and have her right determined. That case was appealed and affirmed. Watkins v. Eaton, 183 Fed. 384, 105 C. C. A. 604. Susan C. Higgins then brought this action to

have her rights under the will of Elizabeth S. Eaton as probated by the courts of Michigan determined. Demurrer was interposed and sustained by Judge Hand, that learned judge taking exactly the opposite view, without citing any authority, held by this court. Higgins v. Eaton (C. C.) 178 Fed. 153. That holding was reversed by the Circuit Court of Appeals (Second Circuit)—Higgins v. Eaton, 183 Fed. 388, 105 C. C. A. 608—and that court referred to the opinion of this court in Watkins v. Eaton (C. C.) 173 Fed. 133, on these subjects and approved same and declared the law to be as already stated.

[9] That decision of the Circuit Court of Appeals is the law of this case, and controls on all the above questions. However, the question of the effect of the voluntary personal appearance of Mrs. Higgins in the Surrogate's Court of Madison county, N. Y., and the contest over the codicil, has not been passed upon. Hervey E. Eaton has no right, generally speaking, to voluntarily distribute the personal estate according to the decision of the Surrogate's Court of Madison county, N. Y., so far as in conflict with the decision of the probate court of Washtenaw county, Mich. He is well informed of that decision, and is presumed to know that the will as established by that probate court governs and controls him. The Circuit Court of Appeals in this action where he is a party has so decided.

The defendant, Hervey E. Eaton, as executor of the last will and testament of Elizabeth S. Eaton, deceased, contends, however, that the decree of the Surrogate's Court of the county of Madison, N. Y., has become and is res adjudicata, final, and conclusive between him and the complainant, Susan C. Higgins, and between Susan C. Higgins and Genevieve S. Jacobs and Nathaniel P. Jacobs, that the codicil and memorandum are valid and to be taken as a part of the last will and testament of said Elizabeth S. Eaton, and that, notwithstanding the decree of the probate court in Michigan, Susan C. Higgins is estopped from claiming that she is entitled to the $100 per month for her life, assuming that the codicil works a revocation of the said gift. In that proceeding in the Madison County Surrogate's Court, Hervey E. Eaton represented himself, one whose right and duty it was to present the will for probate and maintain it if he could. He also represented all the legatees and beneficiaries named in the will and codicil. However, when objections were filed, Hervey E. Eaton and the contestants became adverse or opposing parties. The issue was what papers or written instruments compose or constitute the last will and testament of Elizabeth S. Eaton, deceased, and this involved the question of the mental competency of Mrs. Eaton to execute the codicil; that is, whether or not she possessed the necessary testamentary capacity at the time of its execution in Michigan. If the application had been for letters of administration, the mere fact of assets in Madison county would have been the issue. But here the existence of assets in Madison county gave jurisdiction to proceed with the probate of the alleged will of Elizabeth S. Eaton and the probate of her will at all by that court necessarily involved, under the issue framed, the trial and determination of the question of the due execution by and the testamentary capacity of Elizabeth S. Eaton to exe-

cute the will and codicil. If either of these questions was determined adversely, it was the duty of the Madison County Surrogate's Court to reject the codicil. The determination of this question would determine in New York what the will was, but did not affect the question of the right to letters testamentary, as Eaton was named executor by the will proper, and not by the codicil. As seen, the determination of that question as to the validity of the codicil by the Madison County Surrogate's Court did not (in the absence of Susan C. Higgins or mere service by publication) in any way affect her rights under the will, or, as to the Michigan probate court, in any way make the codicil a part of the will as against a decree by that court that it was not a part of the will, and, as a consequence, as the personal estate, according to the statute of New York referred to and the decisions of the Court of Appeals of the state of New York referred to, is to be distributed, if distributed in New York and by its executor under and according to the will as probated in Michigan, the Surrogate's Court of Madison county in decreeing distribution must follow the will as probated in Michigan, unless Susan C. Higgins is estopped to say that the codicil is not a part of the will.

[10] The contest of a will, a contest over the competency of the alleged testatrix to make it, is not an ordinary suit or action or proceeding inter partes. This is so where the contestants are interested and appear personally and raise the issue. This contest in this case was an essential part of the probate procedure in Madison county, N. Y. These words "inter partes" in the law and decisions relate only to independent controversies inter partes, and not to mere controversies which may arise on an application to probate a will. Farrell v. O'Brien, 199 U. S. 89, 110, 111, 114, 115, 116, 25 Sup. Ct. 727, 50 L. Ed. 101. An examination and comparison of the procedure, rights, and remedies given by the probate court of the states of New York and Washington demonstrate that they are substantially the same. It follows that the contest in Madison county over the validity of the codicil and the testamentary capacity of Mrs. Eaton to make it was not a suit or action inter partes.

In Thormann v. Frame, 176 U. S. 350, 20 Sup. Ct. 446, 44 L. Ed. 500, one Fabacher died in the city of New Orleans leaving a will in which he described himself as of Waukesha, Wis., where his will was executed, where he had a residence, and where the most of his personal estate was situated. Frame, the executor named in this will, presented it for probate in Waukesha county, alleging in the petition that Fabacher at the time of his death was an inhabitant of said county. His widow and ten of his children were named as legatees and devisees. Pending this proceeding Antoinette Thormann, a daughter of Fabacher by a first marriage, petitioned the proper court in Louisiana to be appointed administratrix of the estate of Fabacher, asserting that he "was at the time of his death and many years before a citizen of Louisiana domiciled and residing in the city of New Orleans," that he left property in the jurisdiction of the court, and that "your petitioner is the sole surviving heir and legitimate child of said deceased, issue of his marriage," etc. Letters were issued to

her accordingly. All the notice required having been given, later the probate court in Wisconsin proceeded against objections filed by Thormann that Fabacher was a resident and domiciled in Louisiana, etc., to adjudicate that he was a resident of and domiciled in Wisconsin, etc., and the Supreme Court of the state affirmed the decree. On appeal to the Supreme Court of the United States that court said:

"Whatever the effect of the appointment, it must be as a judgment and by way of estoppel. Now, a judgment in rem binds only the property within the control of the court which rendered it; and a judgment in personam binds only the parties to that judgment and those in privity with them. This appointment cannot be treated as a judgment in personam, and as a judgment in rem it merely determined the right to administer the property within the jurisdiction (Louisiana) whether considered as directly operating on the particular things seized or the general status of assets there situated."

"If then, the decree in Madison county was but a decree or judgment in rem (notwithstanding the appearance and contest of Mrs. Higgins), it only "determined the right to administer the property within the jurisdiction," and the final distribution, even then, must be according to the law of Michigan and will of Mrs. Eaton as there determined, which law and will control as we have seen.

In Caujolle v. Ferrie, 13 Wall. 465, 20 L. Ed. 507, it was held:

"A grant of letters of administration by a court having sole and exclusive power of granting them, and which by statute is obliged to grant them 'to the relatives of the deceased, who would be entitled to succeed to his personal estate,' is conclusive in other courts on a question of legitimacy; the grant having been made on an issue raised on the question of legitimacy alone, and there having been no question of minority, bad habits, alienage, or other disqualification simply personal. *Held*, accordingly, after a grant under such circumstances, that the legitimacy could not be gone into by the complainants on a bill for distribution by the persons who had opposed the grant of letters against the person to whom they had been granted; but, on the contrary, that the complainants were estopped on that subject."

This would seem to be a direct holding by the Supreme Court of the United States that a decision by a probate court on a question necessarily before the court and put in issue and tried and determined estops the party making the contest to deny the fact determined and the legal consequences flowing therefrom. In that case the Revised Statutes of the State of New York provided that the surrogate of each county had sole and exclusive power within the county for which appointed to grant administration on the estate of an intestate who at or immediately previous to his death was an inhabitant of the county of such surrogate. Also, "administration in cases of intestacy shall be granted to the relatives of the deceased who would be entitled to succeed to his personal estate." Jeannie Du Lux died in New York county, intestate, and leaving a large personal estate, and one John Pierre Ferrie applied for letters of administration, claiming he was the only child and sole heir and next of kin to said intestate. Other persons appeared, intervened, and claimed they were of the heirs at law and next of kin and entitled to share in the estate. On the issue whether or not Ferrie was sole heir and next of kin, legitimate, evidence was taken, and it was decided that he was, and letters issued, and this was affirmed by the Court of Appeals. Such contest-

ing parties then filed a bill in the Circuit Court of the United States for their distributive shares seeking to have it adjudicated as against Ferrie that they were entitled to share notwithstanding the decree in Ferrie's favor on the grant of letters that he was the sole heir and next of kin. That adjudication was pleaded in bar and as final and conclusive, and the plea was upheld. That proceeding was in the Surrogate's or Probate Court of New York. True, it was not a proceeding to probate a will, but for the grant of letters of administration. Let us suppose Du Lux had also left a large personal estate in the state of Michigan, and Ferrie had also applied on the same allegations for letters there, and the same contestants had appeared and contested the same question and applied for letters, and it had been held the other way and no appeal taken. The law of the domicile of the testator controls the distribution of the estate of an intestate as well as that of a testator. Assume that the courts of Michigan as do the courts of New York recognize this rule, which is, of course, one of comity, but the law nevertheless when recognized by the courts of a state. How would the courts of Michigan have distributed the estate in Michigan? Or suppose those who contested in New York had applied for letters in Michigan, and Ferrie had contested but without avail, and the question had been decided the other way, and the decision had not been appealed from. Now, suppose that Ferrie with this decision of the New York courts at his back had come into the courts of the United States invoking same, and also the rule of comity by which the law of the state of the domicile of the intestate governs in the distribution of estates asking a decree establishing that he was entitled to the personal property in Michigan, would the courts of the United States have said that Ferrie was estopped by the decree in Michigan as to the personal estate there, and that the other claimants were entitled to it, but to no share in the property in New York? And suppose the other claimants having their alleged rights declared by the decree in Michigan, not appealed from, had come into the United States Circuit Court for a decree adjudging that they were entitled to the personal property in New York, would the court be at liberty to decide that, New York being the domicile of the intestate, its judgments and decrees as the law of the domicile must prevail in all places where the intestate left personal property? Or would it hold the decree first pronounced should control? Or would the United States courts have held that Ferrie was entitled to the property in New York, but the other claimants to that located in Michigan? The courts have said again and again that a judgment in rem binds all the world if the notice required by the laws of the state is given as to the personal property situate in the state where the decree is pronounced. But this means the right to administer and distribute the estate, not the right to distribute it otherwise than as provided by the law of the domicile.

Should not all these controversies yield to the dominant and controlling rule that the law of the domicil of the testator or intestate controls in the distribution of his personal estate, and that, wherever this is recognized as the rule of distribution, judgments or decrees

pronounced by probate courts in a state of the Union not that of the domicile in establishing wills and granting letters, if in direct conflict as to a particular estate, testate or intestate, with those of the state of the domicile, must yield to those of the latter state? If this is not true, then Elizabeth S. Eaton left two wills operative as to her personal estate; for it related to no other as she had no real estate, and as to Susan C. Higgins and the two sisters who contested the codicil with her in New York the codicil is a part of the will, and in Michigan where the testatrix resided, and where all or nearly all the parties in interest reside, it is not. The particular consequences in this case are not to control this question. They might be serious in many cases that may arise. The probate of the will in Michigan (proceeding pending concurrently with that in New York) followed that of the probate in New York, and all parties were cited according to the laws of Michigan. The proof shows that the pendency of the probate in Michigan was known to the parties and Surrogate's Court in New York. The exclusive right of that court to probate the will in the first instance was asserted but overruled. Each court took evidence and by decree established a will (one including the codicil, the other not) as the last will and testament of Elizabeth S. Eaton. Concede that each court had jurisdiction. No appeal was taken in either case. That each court under the statutes of its state had power to prove the will must be conceded.

[11] That the principal and controlling place of administration and execution of the will and distribution under it was Michigan cannot be denied. That the law of that state determines what the will is is equally certain. "In regard to a will of personalty, in an especial manner, the law of the place of the testator's domicile governs the distribution thereof and will govern in the interpretation of wills thereof, unless it is manifest that the testator had the laws of some other county in view." Harrison v. Nixon, 9 Pet. 483, 9 L. Ed. 201; Fowler, Decedent Estate Law, 324; Story, Conflict of Laws, § 380; Code of Civil Proc. (N. Y.) § 2694.

These two wills as established by the court in Michigan and the court in New York have a decree to support them. The New York court did not await the action of the Michigan court and the Michigan court at the place of the testator's domicile rightfully refused to be bound by it or to follow and determine what the will of Mrs. Eaton was and her testamentary capacity to make it. This determines the policy and law of the state of Michigan which controls the question of testamentary capacity as to personalty and the establishment and interpretation of the will. Suppose that this codicil had been such as to seriously affect the rights of legatees under the will proper who did not appear in New York and contest or join in the contest if held binding on Mrs. Higgins and enforced accordingly. Would the courts enforce it to the detriment of such others?

In Sharon v. Terry, 36 Fed. 337, 13 Sawy. 387, 1 L. R. A. 572, an action had been commenced in the federal court when one of the parties went into the state court (Sharon v. Sharon, 79 Cal. 633, 22 Pac. 26, 131), and commenced an action against his adversary in-

volving the same subject-matter. The state court held its judgment valid, and the federal court on the other hand (see case supra) was determined to pay no attention to it. The judgment in the state court was reversed, and this ended the controversy. In 1 Freeman on Judgments (4th Ed.) § 118, he refers to these cases and expresses the opinion that in such a case, if both actions go to judgment, the controlling one will be that of the court first obtaining jurisdiction by the institution of suit. If that be so in the case of the probate of a will, or alleged will of a testator, serious complications and results may follow. For instance, a testator domiciled in Michigan where a large part of his personal estate is situated, the balance being in New York, leaves two papers purporting to be his will both executed in Michigan where the witnesses are and naming different executors, and making a different disposition of his property. The New York executor has one and the Michigan executor the other. It is claimed that the later in date revokes the other, but it is alleged by the executor in New York that the testator had not the mental capacity to make such latter will, and he propounds the earlier will for probate in New York, and the Michigan executor and one or two of the numerous legatees contest and present the later will for probate, but are defeated, and the New York will (we will term it for convenience) is probated in New York. By error or misfortune or neglect no appeal is taken in time, and so the decree stands. In the meantime the Michigan executor propounds the other will in Michigan, gives notice as required by law, and it goes to probate, and no appeal is taken. Is the personal property in New York to be distributed under the (so-called) New York will and the personal property in Michigan under the latter or (so-called) Michigan will? Or is the policy and law of Michigan and the will as actually established by the court of the testator's domicile to govern in the actual distribution of all the property irrespective of the decree of the New York Surrogate's Court? If we leave out the element of contest and assume that none is made in either court, is or is not the will of the testator's actual domicile to control the distribution? I think the policy of the law is that a testator shall have but one will as to his personal estate in whatever state of the United States it may be situated, and that the law of the state of the domicile of the testator determines what that will is, and that, when established by the proper court of such state having jurisdiction and not appealed from, all controversies over it are ended, and that it becomes operative and binding on all whose rights under it are in question, and controls the distribution of the personal estate (save payment of debts) wherever situated, no matter how many contests there may have been in other states on application for probate there over what papers constituted the will made by legatees, or how many different wills may have been established on such contests. A sound public policy demands that this should be the rule. The laws of one state cannot be permitted either on the ground of comity or duty to be overruled by those of another, nor can the judgments of one state be enforced in another on either ground in opposition to its settled policy. This is a question involving more

than the rights of Susan C. Higgins. It involves the due and orderly distribution of the estate and the settlement and determination of the amount each legatee is to receive in the final distribution, and that must be determined, not by what Susan C. Higgins did or did not do in the Madison County Surrogate's Court, but by the terms of the will of Elizabeth S. Eaton, the testatrix, as settled and found to be by the probate court of her actual domicile. The following cases and authorities, while not exactly in point, are pertinent, and demonstrate the law on the subject where judgments in different jurisdictions conflict: 2 Wharton on Conflict of Laws (3d Ed.) 1411, § 656, 1170, § 490; Scoville v. Canfield, 14 Johns. (N. Y.) 338, 7 Am. Dec. 467; Grover & Baker Machine Co. v. Radcliffe, 137 U. S. 299, 11 Sup. Ct. 92, 34 L. Ed. 670; De Brimont v. Penniman, 10 Blatchf. 436, Fed. Cas. No. 3,715. The general rule is that a contract made in a foreign state or the law of such state will not be enforced in another when contrary to its public policy, and it makes no difference that the claim has been reduced to a judgment in a suit between the parties. Says Wharton, § 656:

"Sec. 656. Will not be enforced when overriding home policy, nor when for penalty. We have already seen that a foreign law will not be admitted for the purpose of overriding any rule of distinctive domestic policy. This principle is necessarily applicable to judgments, since, otherwise, all that would be necessary to force the repugnant law upon us would be to formulate it in the shape of a judgment. The fact of the obnoxious prerogative taking shape as a judgment does not make it any the more authoritative. Nor will a judgment entered for a statutory penalty be enforced in a sister or foreign state."

In Grover, etc., v. Radcliffe, supra, page 299 of 137 U. S., page 95 of 11 Sup. Ct. (34 L. Ed. 670), the court said:

"The courts of Maryland were not bound to hold this judgment as obligatory either on the ground of comity or duty, thereby permitting the law of another state to override their own."

In De Brimont v. Penniman, supra, where the French Code provides that a father-in-law and a mother-in-law must make an allowance to a son-in-law who is in need so long as a child of the marriage is living, the son-in-law in France, where all the parties then resided, the son-in-law being domiciled there, but the father-in-law and mother-in-law being citizens of and domiciled in the United States (temporarily in France), obtained a decree for an allowance in the courts of France against the father-in-law and mother-in-law which was not paid. The son-in-law thereafter brought suit on that decree in the federal courts of the United States, which court refused to enforce it as contrary to the policy of our laws. Here was no question of jurisdiction in the courts of France over both the subject-matter and persons of the defendants. To enforce the decree of the Madison County Surrogate's Court is not only to violate the policy of the law of the state of Michigan, but of the state of New York and of the courts of the United States, in the recognition of wills and the distribution of estates of decedents thereunder. Not all judgments or decrees rendered in one state are enforceable in another or binding on the parties there. Says Wharton:

"Nor will a judgment entered for a statutory penalty be enforced in a sister or a foreign state"—citing many cases; New York cases with others.

We may look behind the face of the judgment or decree to see what it was for and the grounds upon which based or pronounced.

[12] Taking these two decrees together, it is impossible for this court to give full faith and credit to both. It is called upon to decline to recognize the Michigan decree at all by saying that Mrs. Higgins is estopped to assert it. If she is estopped to assert it here, she must be estopped to assert it anywhere, even in Michigan. And, as all estoppels to be binding must be mutual, all other distributees and legatees who would profit by enforcing the estoppel against Mrs. Higgins must be estopped or bound also. To hold them all bound would be to substitute the action, decree, and will of the New York Surrogate's Court for that of the probate court of Washtenaw county, Mich., the county and state of the conceded domicile of the testatrix, and thus the declared policy of the law of both states would be defeated by the mere act of Mrs. Eaton in coming into New York and contesting the codicil without avail. I think this one of the cases where the ordinary rule as to judgments does not apply.

[13] It is also the settled policy of the law in the states and United States courts that wills of real estate or affecting real estate must be executed in accordance with the law of the state where the real estate is situated, and that the provisions disposing of such real estate must be valid under the laws of such state. It is not enough that such will and the provisions thereof are valid in the state of the testator's domicile. So it was held in Clarke v. Clarke, 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028, where a will executed by a testator domiciled in South Carolina according to the laws of that state, and valid there and everywhere as to real and personal estate, was construed by the courts of that state as converting all the real estate of the testator, including that situated in the state of Connecticut, into personalty for the purposes of the will, that the courts of Connecticut would not regard or enforce the judgment or decree of the South Carolina court so construing the will. The courts of Connecticut and the Supreme Court of the United States on appeal held that such decree and judgment was not binding, although the general rule is that the construction of a will as to personal estate is for the courts of the testator's domicile. If the real estate in Connecticut was personal estate by virtue of the will, then it was disposed of thereby as personal property; if not so converted, it was not so disposed of. The South Carolina courts had jurisdiction to pronounce a decree construing the will, and ordinarily this decree would be binding everywhere, but as to real estate in Connecticut that state refused to recognize it or hold it binding on the parties to the decree. That decree pronounced in South Carolina was pronounced after contest, appealed from and sustained by its highest court. Clarke v. Clarke, 46 S. C. 230, 24 S. E. 202, 57 Am. St. Rep. 675. If we say that decision turned on the point that the court in South Carolina had no jurisdiction over real estate in Connecticut, we may concede that fact, but, if there was an out and out conversion, as equity regards that as done which is

188 F.—61

directed to be done and ought to be done, then the real estate in Connecticut was personal property and so to be treated, and the South Carolina court had jurisdiction. But the point is that the Connecticut courts, upheld by the Supreme Court of the United States, refused to give any faith and credit to this decree affirmed by the highest court of South Carolina, and not reversed. It was a probate matter, and the rule of comity which prevails in both Connecticut and South Carolina did not, we will say, authorize the courts of South Carolina to construe its own will made by a domiciled citizen as to real estate in Connecticut which it assumed to do and which its law said it might do. Here the Michigan court, the place of the testator's domicile, has refused to recognize the New York ancillary probate (or assume it to be probate in chief for purposes of mere administration in New York). That decree stands. The New York court has no jurisdiction or power to determine the testamentary capacity of Mrs. Eaton as against the courts of Michigan and establish the codicil as a part of the will against the decrees of that court, and yet it did just that if defendant's contention is correct, and this court is called upon to say that its action must be recognized. In 2 Wharton on Conflict of Laws (3d Ed.) p. 1375, § 618a, it is said:

"In the absence of a local statute substituting the lex situs for the lex domicilii as the governing law with respect to succession to personal property, the administration granted at the deceased's domicile is everywhere regarded as the administration in chief, while that granted in another country in which assets are found is considered merely as auxiliary or ancillary."

And at page 1318, § 591a:

"The same general principle that refers a will of personal property to the law of the testator's last domicile applies, without qualification or exception—other than such as may be made by local statute or the public policy of the forum—to the general capacity of the testator to make a will and to the formal validity of the will."

And in section 570, p. 1286, the author, citing authority, including Lawrence v. Kitteridge, 21 Conn. 582, 56 Am. Dec. 385, Story, Conflict of Laws, § 465, Schultz v. Dambmann, 3 Bradf. Sur. (N. Y.) 379, Davison's Will, 1 Tuck. (N. Y.) 479, and 1 Jarmin on Wills (Bigelow's Ed.) 1881, p. 5, and note, says:

"By the English common law, as held both in England and the United States, testamentary capacity, as to personalty, is governed by the law of the domicile of the testator at the time of his death."

And at page 1332, § 595, he says:

"Sec. 595. Judgment of court of domicile has ubiquitous authority. The judgment of the court of the domicile of the deceased at the time of his death is authoritative on the courts of a foreign country in all questions as to the succession and title to personal property, whether under testacy or intestacy, where the same questions between the same parties are in issue in the foreign court as have been decided by the court of the domicile, and where such judgment does not conflict with positive prescriptions of the lex situs."

And at page 1388, § 644, the author says:

"So far as concerns the adequacy of the execution of the will, the rule is that the probate of the testator's last domicile is conclusive"—citing authority.

Rood, on Wills says:

"The law of the testator's domicile determines all questions as to the will so far as personalty is concerned—the testator's capacity; the formality of executing and revoking; the legality of the dispositions; the construction and effect of the provisions. If complying with the law of his domicile, it will be allowed even in the state where he made it without complying with the formalities required by the laws of that state. If not complying with the law of his domicile, it cannot be sustained, though executed in compliance with the law of the state where made and offered for probate and where the property is situated." Rood on Wills, § 409.

In Newcomb v. Newcomb, 108 Ky. 582, 57 S. W. 2, 51 L. R. A. 419, E. B. Newcomb, a subject of the kingdom of Great Britain living in the state of Kentucky, died leaving a widow and two children by her and one by a former wife. He left three different executed papers, each purporting to be his last will and testament, one dated July, 1888, one March 1, 1890, and the other March 4, 1890. The widow presented the paper of March 4, 1890, for probate, and it was probated on her motion in the proper probate court, and she was duly appointed executrix. An appeal was taken by W. S. Newcomb and the probate reversed, and such paper held not to be the will of the said E. B. Newcomb. Prior to the appeal the will was presented in England where Newcomb had personal property, and ancillary letters were issued, and the personal estate in England reduced to possession. After the reversal and affirmance thereof, Mrs. Newcomb presented the will of March 1, 1890, for probate in the Kentucky court and finally presented that of July, 1888, also, but subsequently withdrew both and abandoned the proceedings. Subsequently she took these two papers of July, 1888, and March 1, 1890, to England, and offered them for probate there, and that court on notice required by its laws held that the paper of March 1, 1890, was the true will, and it was probated accordingly and the ancillary probate mentioned was revoked. Subsequently the probate court in Kentucky granted administration of the estate of Newcomb to Ohio V. B. & T. Co. Said W. S. Newcomb subsequently brought suit for a settlement of the estate and made the administrator and Mrs. Newcomb and her children parties, she being the principal legatee in the will proved in England, and sought to have her account for and pay over the money that had come to her hands as executrix to the administrator. The only question was whether or not the probate of the will of E. B. Newcomb in England, of which country he was a subject, was good and controlled. There was no question of two wills in this case. Newcomb left a will and left personal property in England, of which country he was a subject. There is a statute in England which provides for such a case, and provides that the will left by a subject of that kingdom who dies abroad may be proved and shall take effect as to the property left by him in England only. Newcomb and his property left in England were clearly subject to the laws of England as against letters of administration in Kentucky where he resided. A foreign country or a state even has the right to pass a statute which will control, not only the administration, but the distribution of the personal property in its juris-

diction of a person domiciled in another country or state. Indeed, at least two of the states of the United States have done so.

[14] It has been held many times that the full faith and credit clauses of the acts of Congress and of the Constitution of the United States (article 4, § 1) do not require that any more force be given to the judgment or decree of a state court (jurisdiction of the parties and subject-matter being conceded) than the law or custom of the state where pronounced give it or demand. Robertson v. Pickrell, 109 U. S. 610, 3 Sup. Ct. 407, 27 L. Ed. 1049, where it is said:

"The act of Congress declaring the effect to be given in any court within the United States to the records and judicial proceedings of the several states does not require that they shall have any greater force and efficacy in other courts than in the courts of the states from which they are taken, but only such faith and credit as by law or usage they have there. Any other rule would be repugnant to all principle, and, as we said on a former occasion, would contravene the policy of the provisions of the Constitution and laws of the United States on that subject. Board of Public Works v. Columbia College, 17 Wall. 521, 529 [21 L. Ed. 687]."

As we have seen, the courts and the statutory law of the state of New York fully recognize and declare (1) that the laws of the domicile of the testator or intestate govern in the actual distribution of the personal estate of the decedent, and (2) that testamentary capacity to make a will is governed by the law of the testator's domicile, and (3) that proof of the will of a testator or the grant of letters of administration of the estate of an intestate, actually domiciled in some other state at the time of his death, within and by the courts of the state of New York who dies leaving personal property only in the state of New York, is for the sole purpose of administering that personal property so situated in New York, paying creditors, taxes, etc., and then either passing it over to the executor or administrator of the testator or intestate, as the case may be, of the state of the domicile for distribution, or retaining and distributing it itself, but in either event the balance of such estate is to be distributed according to the law of the state of the domicile of such testator or intestate. Matter of Hughes, 95 N. Y. 55, 60; Harvey v. Richards, 1 Mason, 381, Fed. Cas. No. 6,184; Despard v. Churchill 53 N. Y. 192; Dammert v. Osborn, 140 N. Y. 30, 35 N. E. 407; Fowler's Decedent Estate Law, 324, who says:

"Wills of Personalty. It was a postulate of the common law, that movable or personal property has no situs or visible locality, but is subject to that law which governs the person of the owner, both with respect to the manner of its disposition and with respect to the transmission of it either by succession or by the act of the owner. This postulate of the common law became the law of this state by the effectual and formal continuation of that law by the Constitution of the state; and it still remains the law of this state, although the exigencies of modern governments tend more and more to give a local situs to personal property for merely local purposes of taxation."

It was not the purpose of the Legislature of the state of New York to substitute its probate courts in place of those of the state of the testator's domicile as arbiter of the testamentary capacity of the testator or the proper execution of the will. To say that this

was its purpose would contradict the very terms of the New York statute. It would also force legatees and devisees or next of kin as the case might be to come from say Oregon to New York to test the mental capacity, etc., of a testator domiciled in Oregon in the New York courts. Now, I take it that the decree of the proper Surrogate's Court in New York, not appealed from, establishing the will of a testator domiciled here, settles the law of the state of New York as to what his will is, and that the decree of the proper probate court in Michigan, not appealed from, determines the law of that state as to what is the last will and testament of a testator domiciled there. New York has not undertaken to say by statute that the personal estate here of a person domiciled in another state shall be distributed according to our law or according to the will as proved here in the case of a testator domiciled abroad, but has said exactly the contrary. Code Civ. Proc. § 2694, reads as follows:

"Sec. 2694. What Laws Govern as to Effect of Testamentary Disposition. The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated, which would descend to the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident at the time of his death."

"The place of domicile is the place of principal administration and other administrations are merely ancillary. The law of the place of ancillary administration governs as to the payment of debts there; but the distribution is made according to the lex domicilii." Churchill v. Prescott, 3 Bradf. Sur. (N. Y.) 233; Suarez v. Mayor, 2 Sandf. Ch. (N. Y.) 173; Mills v. Fogal, 4 Edw. Ch. (N. Y.) 559.

Section 2700 of Code of Civil Procedure, which provides for the disposition of the personal estate here belonging to the estate of a testator or intestate domiciled in other states, reads as follows:

"Sec. 2700. Ancillary Executors and Administrators to Transmit Moneys. The person to whom ancillary letters are issued, as prescribed in this article, must, unless otherwise directed in the decree awarding the letters; or in a decree made upon an accounting, or by an order of the surrogate, made during the administration of the estate; or by the judgment or order of a court of record in an action to which that person is a party; transmit the money and other personal property of the decedent, received by him after the letters are issued, or then in his hands in another capacity, to the state, territory, or country, where the principal letters were granted, to be disposed of pursuant to the laws thereof. Money or other property, so transmitted by him, at any time before he is so directed to retain it, must be allowed to him upon an accounting."

It seems to me very clear that it is the policy of the probate and administration laws of the state of New York, in the case of a testator or intestate domiciled in another state, to respect and conform to the law of that state and either transmit the personal estate located here, after payment of debts and taxes and other charges, if any, to that court for distribution there in accordance with the law of such state which includes the decisions of its courts as to what the

will of the testator is, or to distribute, in certain cases, under and through its own courts in accordance with such law; also that the probate in New York of the will of such testator domiciled in such other state authorized by statutes (Code Civil Proc. §§ 2476, 2611), is for the purpose of fixing the right of administration in New York so far as personal property there is concerned and the rights of heirs and devisees in real estate, and not for the purpose of determining as against the courts of such other state the testamentary capacity of the testator or what his will actually is. If the latter be the purpose and effect of the New York statute, then its courts not only determine what the will is as against the courts of such other state, the state of the testator's domicile, the question of due execution according to the laws of such state and what its laws are, and their true meaning, and also the law of that state as to testamentary capacity and whether the testator possessed it, but enforce it so far as the New York courts have possession of the assets. If this is done, the law of New York, not the law of Michigan, in this case governs in the distribution of substantially the entire personal estate of Elizabeth S. Eaton in the face of the express mandate of section 2694, Code of Civil Procedure, above quoted.

I do not think, in face of the provisions quoted, the New York courts will give any such effect as is contended for to the probate of this codicil in the Madison County Surrogate's Court, but that they will and must recognize the will as·probated in Michigan. New York can hardly afford to establish the doctrine contended for against its own domiciled citizens and their estates who have assets in other states at the time of death. If such is its law, California or Oregon or any far distant state may enact a like statute, and, in case of domiciled citizens in New York who happen to have personal estate there prove his will, determine for itself all the questions referred to, determine for itself the New York laws, and, disregarding the decisions of its courts in regard thereto, distribute the personal estate as it says the laws of New York require. If its courts get ahead of those of New York, New York must accord such judgments full faith and credit, regardless of its own. I think, therefore, that so far as the probate in Madison county is concerned it conclusively established the right to administer in New York; that a will existed; that Eaton was executor named therein, and justified the letters testamentary and administration of the property here to the extent stated, but that it did not conclusively establish that Elizabeth S. Eaton had testamentary capacity according to the law of Michigan to execute the codicil on which question the decree of the probate court of that state is conclusive; and that, therefore, the codicil must be held void, and that it forms no part of her last will and testament. This is giving to the decree of the Madison County Surrogate's Court the full faith and credit it is entitled to, and the same force and effect the courts of the state of New York will, or should, give it so far as distribution of the estate is concerned. Again, sections 2695–2704, New York Code of Civil Procedure, provide for the record and execution in New York of wills made by testators domiciled in other states and proved there, and such wills

cannot be proved here at all, having been once proved in the state of the testator's domicile. Clark v. Poor, 73 Hun, 143, 25 N. Y. Supp. 908. And in Cross v. United States Trust Co. of N. Y., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597, it is held:

"Personal property is subject to the law of the owner's domicil both in respect to a disposition of it by act inter vivos and to its transmission by will, or by succession on its owners dying intestate."

So in that case a trust of personal estate created by a will in Rhode Island to be executed in New York and which trust was to be executed in New York was held valid, and our courts would not interfere or entertain an action to declare the invalidity of the trust under our laws. All that Foulke v. Zimmerman, 14 Wall. 113, 20 L. Ed. 785, decides is that a will proved in New York and then in Louisiana protects a purchaser in good faith and for value in Louisiana, who relied on such probate, although the probate in New York had been reversed.

It is not clear that the courts of New York will refuse to give greater force to the will of a testator domiciled in Michigan and first proved in New York and then in Michigan than they would if such will had been first proved in Michigan, and then recorded in New York. The policy of the New York statutes and decisions is very plain, viz., to recognize and enforce the will of a testator domiciled in another state relating to personal property, and, so far as it relates thereto, as it is finally declared to be by the courts of such state. And I doubt not that the New York courts expect the same rule to be applied by the courts of other states with reference to the wills of the testators domiciled in New York leaving personal property in such states, excepting, of course, those states which have adopted a distinctly different statutory rule and policy. There is conflict of authority as to the effect of a decree admitting or rejecting a will outside the state pronouncing it. Kerr v. Moon, 9 Wheat. 565, 6 L. Ed. 161, not conclusive; Bowen v. Johnson, 5 R. I. 112, 73 Am. Dec. 49, is only prima facie evidence; Rice v. Jones, 4 Call. (Va.) 89, decree of one state rejecting a will for incapacity of testator has no effect in probate proceedings in Virginia. See, also, In re Gaines, 84 Hun, 520, 32 N. Y. Supp. 398, affirmed 154 N. Y. 747, 49 N. E. 1097, absolute rejection as a forgery did not preclude proof in New York, the state of testatrix's domicile. Also Williams v. Jones, 14 Bush. (Ky.) 418, not within the full faith and credit clause; and see Blount v. Walker, 134 U. S. 607, 10 Sup. Ct. 606, 33 L. Ed. 1036, question not decided. But see Ives v. Salisbury, 56 Vt. 565; and Crippen v. Dexter, 13 Gray (Mass.) 330, contra. In Nat v. Coons, 10 Mo. 543, and Stewart v. Pettus, 10 Mo. 755, it is held that, when the domicile of the testator is in another state than Missouri, the probate in such other state is invalid. So held in Varner v. Bevil, 17 Ala. 286; Brock v. Frank, 51 Ala. 85; Sturdivant v. Neill, 27 Miss. 157; Wells v. Wells, 35 Miss. 638; Manuel v. Manuel, 13 Ohio St. 458; Stark v. Parker, 56 N. H. 481, record, etc., from another state of no effect if domicile was in New Hampshire.

[15] I think the weight of authority and reason is that the probate or rejection of a will of personal property by the courts of a state other than that of the domicile has no effect on distribution as against a decree of the court of the testator's domicile in all states where the distribution is to be according to the law of the testator's domicile. If distribution is to be according to that law and under a will, it seems to me that the will as probated and established in that state is the law of distribution of that estate. If the will as established by the law of the state, a decree of the court of the state, does not furnish the rule for distribution, I am unable to determine where it would be found. This must be so unless New York, pretending to regard the law of the testator's domicile in such cases, has reserved to itself the right and power to determine what the will is and override the courts of the domicile.

It is claimed that the probate court of Washtenaw county, Mich., had no jurisdiction to take proof of the will of Elizabeth S. Eaton and admit it to probate, for the reason the statutes of that state require that the will itself be produced (or its loss or destruction proved), and that this will was never produced in that court. I do not think this point has merit.

[16, 17] First the production of the will was not jurisdictional at all; second, the probate court of Michigan made provision for taking the proofs by deposition, etc., and it was so taken and the will and codicil were produced before the person authorized to take the depositions. This within the statute referred to was a production in court. Estate of Delaplaine, 12 Civ. Proc. R. 401; 9 N. Y. St. Rep. 786.

[18] The statutes of Michigan (Comp. Laws) do not provide for the recognition or record of the alleged will of a person actually domiciled in that state and proved outside the state. The statute reads ([9282] section 21):

"That any will duly admitted to probate without the probate court of any county in this state in which the testator left real or personal estate, and in the place of the testator's domicile, may be duly admitted to probate and recorded in this state by duly filing an exemplified copy of said will and of the record admitting the same to probate; and proceeding in the manner hereinafter provided."

(9283) Section 23:

"If, on hearing the case, it shall appear to the court that the instrument ought to be allowed in this state, as the last will and testament of the deceased, the copy shall be filed and recorded and the will shall have the same force and effect as if it had been originally proved and allowed in the same court."

See In re Mower, 48 Mich. 441, 12 N. W. 646. As to the policy of the Michigan courts, see Glynn v. Corning, decided February 3, 1910, 159 Mich. 474, 476, 477, 124 N. W. 514–516 (134 Am. St. Rep. 739), where it is held:

"The question presented is whether the will of a person domiciled in another state, who died leaving an estate within this state, may be admitted to probate here before its validity is established in a proceeding in the courts of the domicile of the testator. * * * It is plain that the Legislature has recognized the right of the courts of the domicile of a testator to conclusively

determine the validity of the will, and quite as plain that the courts of the domicile of this testator have made no such determination. It has been repeatedly held that the issue here upon the offering of a domestic will for probate is 'will or no will.' We have then these two methods provided by the Legislature for admitting wills of deceased persons to probate: One, to try out every issue upon which validity of the instrument depends; the other, to accept the determination of all of these issues by the courts of the domicile of the testator. There is no method pointed out for admitting a will here as valid to the extent of appointment of an administrator of the estate, leaving the question of its validity to be determined at the domicile of the testator. It is not conceivable that the courts of this state will inquire about and finally decide that a certain instrument is, or is not, a valid will, subject to having the determination reversed by the courts of any other state. Assuming the right of each state to assert complete jurisdiction in rem over all property of decedents found within the state, including the right to determine, through its tribunals, the validity or nonvalidity of a foreign will, it is equally the right of each state, acting through its Legislature, to accept as conclusive the judgment of the courts of the domicile of the testator as to the validity of his will and to permit his property, found in the state, to be disposed of according to the provisions of the will. I find in the statutes sufficient evidence of a state policy which denies to the probate court of Saginaw county the jurisdiction which it assumed when it admitted the particular will to probate."

In Matter of Rubens, 128 App. Div. 626, 112 N. Y. Supp. 941, affirmed by Court of Appeals on opinion below, holds that the will of Rubens, who died in France leaving property in New York, might be proved in New York even if not executed according to the laws of France. That this is the law I do not doubt. It is not a decision, however, that if a will of Rubens had been proved and probated in France as his will, and this one denied probate there on the ground of mental incompetency to make it, that the will proved here and denied probate there would control the distribution of the personal estate here. Neither does the case hold that the will will control the disposition of the personal estate of Rubens in New York. The effect of the will was not passed upon. And the question of testamentary capacity to make the will was not in question. It is not held in the Rubens Case that if Rubens had been shown domiciled in France, and then by the laws of his domicile declared incompetent to execute a will, the will would have been admitted to probate here. Indeed, Judge Clarke quotes with approval Surrogate Rollins in Matter of McMulkin, 5 Dem. Sur. (N. Y.) 295:

"There is no inconsistency between section 2611 as thus interpreted and section 2694. * * * A will may be entitled to probate although all its dispositions of property may be discovered to be invalid. It was not intended to overthrow the established law that the law of the domicile of a testator leaving a valid will determines the distribution of all personal property. Indeed, as said Judge Clarke, the will of a testator domiciled in one state relating to both real and personal property, or only real property, must be proved, if duly executed and the testator was competent to make a will, but it would have no effect in the disposition of real property in another state if not executed according to the laws of such state. The law that domicile controls disposition is not changed."

In Cross et al. v. U. S. T. Co. et al., 131 N. Y. 330, 341, 30 N. E. 125, 127, 15 L. R. A. 606, 27 Am. St. Rep. 597, the court said:

"Should our Legislature deem it for the public good to repeal the statute relating to wills, and to provide that all property should, upon the death of the owner, pass under the laws of intestacy, a disposition by will of personal property, actually within the territory of the state, but owned by a person domiciled in another state, would still be valid, providing it was valid by the law which governed the owner. When it is urged that we are bound by foreign law as to all the formal requisites of a will, as a testamentary instrument, the capacity of the testator to make it, and its legal construction, meaning and effect, and not bound by such law with respect to the particular bequests by which the testatrix has distributed her property among her heirs and next of kin, it is not perceived that such a distinction has any sound reason or principle to rest upon."

The will of a person domiciled in New York must be proved in New York, and Michigan recognizes its action as final and conclusive. It would be a violation of all rules of justice and comity for New York to say it will prove the will of a person domiciled in Michigan in its own courts and assert its action against the courts of Michigan and distribute the personal estate as it determines the will to be regardless of the action of the Michigan courts.

It is claimed that Mrs. Higgins has accepted benefits under the codicil as proved in New York, and therefore is estopped to question its validity. I find no evidence establishing such fact. While in the first instance objections were filed to both will and codicil and memorandum, these were abandoned as to the will proper, and the sole question was over the codicil and memorandum. The proof of the will proper was and is valid, and the issue of letters to Hervey E. Eaton was and is valid, and conferred power on him to pay all debts owing by Elizabeth S. Eaton, whether owing to persons in New York state or elsewhere. He has the right to administer the estate, but not to distribute same except according to the law of the state of Michigan. How far he may be protected in making payments to Mrs. and Mr. Jacobs under the codicil can be determined in an appropriate proceeding. If I am correct in my understanding and interpretation of the will and codicil, allowing both to stand, and, if both stand, the executor is fully protected, as the codicil in providing for the care of George A. Storms by Mrs. and Mr. Jacobs simply modifies the condition of the will imposing that duty on Mrs. Higgins, but does not revoke or annul the gift of $100 per month to her.

My conclusion, therefore, is pursuant to Waterman v. Canal Louisiana Bank & Trust Co., Executor, 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80, that the complainant, Susan C. Higgins, is entitled to a decree establishing her interest in the estate of Elizabeth S. Eaton, late of Ann Arbor, Mich., and now in the hands of Hervey E. Eaton, as executor, etc., under the last will and testament of said Elizabeth S. Eaton, viz., that the legacy to her of $100 per month for and during the term of her natural life is not revoked expressly or by implication or substitution, but is in full force and effect, and is a charge on the income of the personal estate and property of said testatrix to be paid in due course of administration by said executor if distribution is retained in New York, or by the administration with the will annexed in case such property is transmitted to Michigan for

distribution and also fixing the amount now due her. Mrs. and Mr. Jacobs are not before this court, nor was their presence necessary, and the effect of the payment to them pursuant to the codicil on the executor is not determined, although this court is of opinion such payment is fully justified if the codicil is finally held to be a part of the will.

Decree accordingly, with costs to be paid from the estate in due course of administration