Matter of the Estate of ELIZABETH S. EATON, Deceased. In re Petition of WILLIS L. WATKINS for Ancillary Administration.

(Surrogate's Court, Madison County, January, 1918.)

Wills — probate of — codicils — executors and administrators — Surrogate's Court — when application for ancillary letters of administration denied — Code Civ. Pro. § 2629.

A will executed in the state of New York and a codicil thereto executed in the state of Michigan, where testatrix resided at the time of her death, were, after a contest, duly admitted to probate in the state of New York, and an account by the executrix of the executor of his proceedings under the will was duly approved and settled by the surrogate and letters of administration with the will annexed issued. Although exemplified copies of both the will and the codicil were offered and used in a probate proceeding instituted in the state of Michigan during the pendency of the first probate proceeding the will alone was admitted to probate and letters of administration with the will annexed granted to the petitioner herein. Upon his application for ancillary letters of administration it appeared that no appeal was ever taken from the decree of probate made by the Surrogate's Court in this state; that the changes made in the codicil not only affected the rights of certain persons but also the rights of all the residuary legatees; that the most important difference between the combined will and codicil as probated here and the will as probated in the sister state grows out of the provisions of the codicil for the support, care and maintenance of the mute brother of the testatrix. *Held,* that so far as property in this state was concerned the will with the codicil was the real will and not the will probated without the codicil and the application should be denied.

That while it might conform to the letter of section 2629 of the Code of Civil Procedure to grant the ancillary letters of administration prayed for, it would violate its spirit and be an idle ceremony.

APPLICATION for ancillary letters of administration.

John A. Johnson (A. F. Freeman and B. M. Thompson, of counsel), for Willis L. Watkins, petitioner.

Carlos J. Coleman, for Emma A. Storms, administratrix C. T. A. of Elizabeth S. Eaton, deceased.

Frank E. Jones, in person and as special guardian and committee of George Albert Storms, an incompetent.

SENN, S. This is an application by Willis L. Watkins, as administrator with the will annexed, of the last will and testament of Elizabeth S. Eaton, deceased, for ancillary letters of administration in Madison county, based upon the probate of said will in the state of Michigan, petitioner having been appointed such administrator with the will annexed under the Michigan probate.

The legal propositions involved in the administration of this estate have come to the present surrogate as a kind of legacy, at least they have existed during the terms of two former surrogates and had numerous days in court. In addition, the conflicting contentions of the various parties in interest have been in the federal courts enough times so that they appear in at least six reported federal cases. With the various proceedings in Madison county Surrogate's Court, and appeals therefrom, the certified and exemplified proceedings in the Michigan courts filed here and the various decisions of the federal courts filed in this office,— there is an accumulation of petitions, orders, decrees, decisions, exhibits, letters and other papers too numerous to mention, of such volume and magnitude that, if they do not actually rival those portrayed by Dickens in Jarndyce and Jarndyce, they at least serve to mitigate the author's evident exaggeration.

Still, out of the accumulated mass of files, records and reported decisions, the following condensed history of the case stands out with sufficient clearness to serve the purposes of the decision on this application, viz.:

Elizabeth S. Eaton of Ann Arbor, Mich., died at her home about May 17, 1906, leaving a last will and testament dated October 31, 1901, and a codicil to this will dated March 31, 1906.

The will was executed in the state of New York at the home of Hervey E. Eaton, her brother-in-law, whom she named as executor, and with whom she left the will. The codicil was executed in Michigan and by Mrs. Eaton forwarded to Mr. Eaton, directing him to attach it to the will, which was done.

When testatrix died she had household furniture, etc., in the state of Michigan worth approximately $575. Her will, codicil and remaining property consisting mainly of bonds, certificates of stock and securities, amounting to about $50,000, were in the hands of Hervey E. Eaton, the executor named in the will, who on May 29, 1906, offered the will and codicil in the Madison county Surrogate's Court, especially the codicil, for probate. Probate of the will and codicil, especially the codicil, was contested by Susan C. Higgins, a sister of testatrix and a legatee under the will. Such proceedings were duly had upon the issues raised by the petition, objections and contest that a decision was reached by the surrogate admitting the will and codicil to probate and granting letters testamentary to said Hervey E. Eaton. No appeal was ever taken from this decision and the will and codicil are now in force in this county as the will and codicil of Elizabeth S. Eaton. The will and codicil were recorded November 12, 1906.

While the contested proceedings were still pending

and about July 23, 1906, said Susan C. Higgins filed
a petition for the probate of said will in the Probate
Court of Washtenaw county, Mich., being the county
where testatrix resided at the time of her decease.
So far as I can learn from the papers on file here,
no effort was made to probate the codicil in the
Michigan court, although exemplified copies of the
will and codicil probated here were offered and used
in that proceeding. At any rate, such proceedings
were had in the Probate Court of Washtenaw county
that on November 30, 1908, two years after the pro-
bate in Madison county, the will was by the Michigan
court admitted to probate and the codicil denied pro-
bate and letters of administration with the will
annexed were thereupon granted to Willis L. Wat-
kins, the petitioner herein, who is still acting there-
under.

Hervey E. Eaton continued to act as executor until
about August, 1916, when he died leaving a will which
was duly probated and Olivia C. Eaton, his widow,
nominated as such in the will was duly appointed
executrix. She filed an account of her husband's
proceedings as executor, which has been duly approved
and settled by the surrogate, the estate of Hervey
E. Eaton duly released, and letters of administration
with the will annexed of the will and codicil have been
granted to Madison County Trust and Deposit Com-
pany and to Emma S. Storms who has duly qualified
and is now acting as such.

Thus there are at present two administrations, one
of the will and codicil in this county and one of the
will only in the state of Michigan. In effect, the
situation is the same as though two wills of the same
testatrix, made at different dates, had been probated,
one in Michigan and one here. The most important
difference between the combined will and codicil as

Surrogate's Court, Madison County, January, 1918.   [Vol. 102.

probated here and the will as probated in Michigan grows out of the provisions for the support, care and maintenance of George Albert Storms, the mute brother of the testatrix. In this regard the will is as follows:

"*Sixth.* I give and bequeath to my sister, Susan C. Storms, during the term of her natural life, from the income of my estate, one hundred dollars per month, provided and on condition that she cares for and makes a home for my mute brother George Albert Storms during his lifetime.

" *Seventh.* Should my sister Susan C. Storms die before my brother George Albert Storms, then and in that case I hereby direct my said executor to pay to my sister Leah Catherine Kersey, from the income of my estate the sum of fifty dollars per month for caring for and making a home for my said brother, George Albert Storms, during his lifetime, and in case said George Albert Storms should survive both Susan C. Storms and Leah Catherine Kersey, then my said executor is hereby authorized and directed to make other suitable and sufficient arrangements for such care and home and to pay for the same."

Between the making of the will and codicil conditions had changed, among other things that Susan C. Storms had become Susan C. Higgins by marriage. The codicil contained the following:

" Whereas my brother George Albert Storms is unable to care for himself through physical defects and infirmities, it is my wish that my sister Genevieve S. Jacobs and her husband Nathaniel P. Jacobs do so care for him and make his home with them during the term of his natural life and that they shall receive the sum of seventy-five dollars ($75) per month compensation during that time. In the event of his death before that of Genevieve S. Jacobs or Susan S. Hig-

gins I direct that they shall share alike with the other heirs in the general and final distribution of my estate.''

It can readily be seen that the change made in the codicil not only affected the rights of Mrs. Storms-Higgins and Mrs. Jacobs and her husband but, as a necessary consequence, the rights of all the residuary legatees. It also had an important bearing on the status and rights of the mute brother, although his maintenance is evidently provided for under almost any contingency. Thus it will be seen that much depends on the determination as to which of the two conflicting administrations is to be considered and held to be the principal or prevailing administration and which is ancillary or secondary, because the will considered by itself is in conflict with the will and codicil.

I find that this question of precedence or dominance has already been determined by court decrees and holdings that are conclusive upon this court and the parties concerned.

After the probate in Michigan the Michigan administrator, and later Mrs. Higgins, brought suit in the United States Circuit Court to endeavor to establish that the Michigan decree of probate took precedence over the Madison county decree. Mrs. Higgins' suit had an interesting career of ups and downs but at last it was decreed by the United States Circuit Court of Appeals, reversing the Circuit Court, that the Madison county decree of probate and granting letters took precedence over the Michigan decree so far as concerns property in New York; also that the codicil superseded and did away with the sixth clause of the will. Application to be permitted to take the case to the United States Supreme Court to have this

determination reviewed was denied and the adjudication became final.

In the United States Circuit Court Mrs. Higgins had succeeded in procuring a decree that the Michigan decree of probate took precedence and that she was entitled to her legacy of $100 a month. This is the decree that was reversed by the United States Circuit Court of Appeals, as stated. Before her decree was reversed she instituted a proceeding in the Madison county Surrogate's Court (the United States court having no power to enforce its decree) to recover her legacy of $100 a month and for a determination that the Michigan decree had precedence over that in New York. Judge Kiley, in a very exhaustive review of the law and facts, refused to hold that the Michigan decree had precedence, but granted her petition to have her legacy under the sixth clause of the will paid to her, but subject to the condition that the decree of the United States Circuit Court be in this respect affirmed. But the decree was reversed, as above set forth.

An appeal from the surrogate's decision to the Appellate Division of the Supreme Court resulted in a unanimous affirmance.

In *Matter of Eaton,* 159 App. Div. 7, the court reciting the foregoing facts, among other things, said: " It is conceded by all parties concerned herein that the United States courts had jurisdiction to hear and determine the suit concerning this subject-matter. Having jurisdiction and having made an adjudication their determination is beyond all doubt *res adjudicata.* Whatever they determined is the law, binding upon this court, binding upon all the litigants, surely binding upon Mrs. Higgins who chose the forum. To hold otherwise would be to make all the proceedings in the United States courts a nullity. And the situation here is doubly *res adjudicata.* Mrs.

Misc.] Surrogate's Court, Madison County, January, 1918.

Higgins contested the probate of the will before the Madison County Surrogate's Court and she was beaten; but she did not appeal. This determination, therefore, became final and binding upon her and upon everybody, and nothing determined there can be reviewed here. It is unnecessary to cite authorities to sustain this proposition; the law is well known.

"Believing as we do that the doctrine of *res adjudicata* is controlling on this controversy, we think it unnecessary to discuss any of the other points presented, for whatever views we may entertain concerning the ' comity of nations,' primary and ancillary probate proceedings, the precedence or otherwise of the domiciliary court over the Madison County Surrogate's Court, or the effect of the codicil upon the 6th clause of the will, are of no moment now. If the questions presented have been litigated and decided in courts having jurisdiction, that is the end of it."

That would seem to be final as far as the precedence of the New York decree over that in Michigan is concerned. If it was doubly *res adjudicata* in the Appellate Division, it is now trebly so, for their decision is now that of this court.

It follows that so far as property in this state is concerned the will with the codicil is the real will of Elizabeth S. Eaton, deceased, and not the will without the codicil under which petitioner now seeks ancillary letters in this state.

How, asks counsel, can the surrogate refuse ancillary letters to the petitioner in the face of the plain language of section 2629 of the Code of Civil Procedure?

I do not think the framers of the Code contemplated a case like this. It is an anomalous situation. Ancillary letters would be inconsistent with and a contradiction of the will and codicil in force in this state. If not, they would mean nothing. The New York decree

Surrogate's Court, New York County, January, 1918.    [Vol. 102.

having precedence, no property in this state would be administered under the ancillary letters and thus the very purpose for which such letters are granted would fail.   There are no debts of the estate unpaid in this state, and, if there were, they would be provided for under the principal administration now in force in this state.   To grant them (ancillary letters) might conform to the letter of the Code but it would violate its spirit and be an idle ceremony.

It would, indeed, be worse than that, for it would violate the legal adjudications made in regard to this very estate.   Ancillary letters pre-suppose something which, in this case, does not exist, viz.: a superior or dominant administration in some other state.

The application for ancillary letters must, therefore, be denied and a decree may be entered accordingly.

Application denied.