Matter of the Estate of ELIZABETH S. EATON, Deceased.   (In re Petition for Payment out of the Estate in Madison County of Certain Sums as Decreed by the Circuit Court of Washtenaw County, Michigan.)

(Surrogate's Court, Madison County, September, 1919.)

Decedents' estates — executors and administrators — jurisdiction — when decree of probate court of sister state is ineffectual in this state.

A decree entered in an accounting proceeding in a probate court in a sister state allowing certain accounts and holding them to be just charges, liens and obligations against the estate of the testatrix herein " wherever such estate and prop-

erty of the decedent is situate, as duly made and expended, in the proper and necessary administration of such estate" is ineffectual in this state against the representative of the estate appointed in this state as no state can exercise direct jurisdiction and authority over persons or property without its territory, and an application for an order directing the payment of the claims by the administrators with the will annexed in this state will be denied.

APPLICATION for an order directing the payment by the administrators with the will annexed out of the funds in their hands of certain judgments and awards of the Probate Court of the county of Washtenaw, Michigan.

J. A. Johnson (A. F. Freeman, of counsel), for petitioner.

Carlos J. Coleman, for administrators c. t. a.

Frank E. Jones, in person and as special guardian and committee of George Albert Storms, an incompetent.

SENN, S. A petition has been filed in this court on behalf of Ralph Phelps, Jr., of Detroit, Mich., and others, for an order directing the payment by the administrators with the will annexed in this county out of any funds in their hands, of certain judgments and awards of the Probate Court of the county of Washtenaw, Mich., as affirmed on appeal by the Circuit Court of that county, against the estate and property of Elizabeth S. Eaton, deceased, wherever the same may be.

The facts on which the application is based are, briefly, as follows:

Elizabeth S. Eaton of Ann Arbor, Mich., died at

Surrogate's Court, Madison County, September, 1919. [Vol. 108.

her said home about May 17, 1906, leaving a last will and testament and codicil in which her brother-in-law, Hervey E. Eaton, of Madison county, was named as executor. When she died testatrix had household furniture in Michigan worth about $575 and her remaining estate of about $50,000, consisting of stock certificates, bonds and other securities, was in the hands and custody of her said executor, and had been for some time. Her will and codicil were likewise in his possession.

The will and codicil were probated in this court and letters testamentary were duly issued to said Hervey E. Eaton, who acted as executor until his decease. The will and codicil are still in force in this county.

The proceedings for the probate of the will and codicil in Madison county were contested and during their pendency a proceeding was instituted in the Probate Court of Washtenaw county, Mich., to have the will probated but to have probate denied to the codicil, which materially affected and changed the rights of certain legatees. Such proceedings were had in that court that the will was admitted to probate and probate of the codicil was denied, and letters of administration with the will annexed were thereupon granted to Willis L. Watkins. After the decease of Hervey E. Eaton, the New York state executor, and the settlement of his accounts as such, letters of administration with the will annexed were by this court granted to the Madison County Trust and Deposit Company and to Emma Storms, who duly qualified and are still acting under said letters, and the remaining assets in this state are still in their hands. Thus there were, and are, two conflicting administrations, one of the will and codicil in this county and one of the will only in the state of Michigan, in effect the same as though two different wills,

of the testatrix had been probated, one in Michigan and one here.

After the decease of Hervey E. Eaton and at about the time of the appointment in this county of the administrators with the will annexed, Willis L. Watkins, the Michigan administrator, applied to this court under section 2629 of the Code of Civil Procedure, for ancillary letters of administration to be issued to him pursuant to his appointment by the Michigan court, as above set forth. He urged his right to such appointment not only upon the plain language of the section of the Code, but on the further ground that under the law of the domicile, the administration in Michigan must be regarded and held to be the superior and dominant administration. The application was denied on the ground that ancillary letters would be inconsistent with the will and codicil in force in this state, as well as previously adjudicated in regard to this estate. From that determination an appeal was taken to the Appellate Division of the Supreme Court, in which the decree appealed from was affirmed and is now in force. The facts in that proceeding, which are more or less applicable in this, are quite fully set forth in my opinion in *Matter of Eaton,* 102 Misc. Rep. 370, to which I refer for a more detailed statement, and to avoid repetition here.

From the papers on file in this court, it appears that before the term of office of the present surrogate, efforts were made in the Madison County Surrogate's Court to procure the transfer of the assets, papers and securities in the hands of the Madison county executor to the administrator in Michigan, and quite strenuous efforts were made in this and other courts, federal and state, to have the administration in Michigan held to be superior or dominant, all of which

38

efforts have failed. See *Matter of Eaton,* 159 App. Div. 7; *Watkins* v. *Eaton,* 173 Fed. Repr. 133; *Higgins* v. *Eaton,* 178 id. 153; *Watkins* v. *Eaton,* 183 id. 384; *Higgins* v. *Eaton,* Id. 388; *Higgins* v. *Eaton,* 188 id. 938; 202 id. 75.

Indeed, the petition now before me asks for the transfer of the funds and securities to the hands of said Willis L. Watkins, administrator, and the same relief has been asked during the incumbency of my predecessors.

After the determination of the proceedings for the probate of the will in Washtenaw County Probate Court, upon an accounting in that court, certain accounts against the estate were by the final decree allowed and held to be just charges, liens and obligations against the estate of said deceased testatrix, " wherever such estate and property of the decedent is situate, as duly made and expended in the proper and necessary administration of such estate." The decree recites, " and it duly appearing that all persons interested in said estate have been also duly cited to appear at such hearing," and that all who appeared had been heard. On appeal to the Circuit Court of Washtenaw county the decree was more or less modified and some of the amounts reduced. As finally fixed by the court, in its decree made December 6, 1915, they were as follows:

To Ralph Phelps, Jr., $354.95; B. M. Thompson, $1,836.25; Orla B. Taylor, $187.50; A. F. Freeman, $2,814.55; John A. Johnson, $218.85. The joint account of A. F. Freeman, B. M. Thompson, Ralph Phelps, Jr., and Orla B. Taylor, $2,431.44 and interest thereon at five per cent from December 1, 1914, to the date of the judgment, $121.57; Willis L. Watkins, administrator, etc., $553.94. The sum of $50 each to said Freeman, Thompson and Jones; to E. P.

Goodrich, $40.   Making a total of $8,709.05 aside from interest from the date of the decree.   All the persons whose claims are so allowed, except Mr. Watkins, Mr. Taylor and Mr. Goodrich, have appeared more or less as attorneys in the proceedings in this state, and I think it may properly be assumed that the allowances were for services and disbursements in the probate proceeding, although it does not definitely appear what they were for.   It seems that $500 was allowed to Willis L. Watkins as " an extraordinary service charge, under the statute."   Whether the allowances included any services in contesting the probate in this state and in the various proceedings instituted in the attempt to secure the control of the estate to the Michigan administration or whether they only included services in the Washtenaw County Probate Court and Circuit Court, does not appear, unless by inference from the amounts.   There is nothing in the files here to indicate that the proceeding to probate the will without the codicil in the Washtenaw County Probate Court was seriously contested, if at all.

The petition now before me recites the facts as to the allowances by the Michigan courts as above set forth and is accompanied by duly authenticated copies of the decrees and records of the proceedings of those courts in regard to said allowances.   There being no funds in the hands of the administrator in Michigan available for that purpose, I am asked to " allow in this court the said judgments and awards of the said Circuit Court for the County of Washtenaw " and direct their payment from the funds and assets of the estate within the jurisdiction of this court.

Petitioners call my attention to section 1, article IV of the Constitution of the United States, that "Full Faith and Credit shall be given in each State to the

public Acts, Records and judicial Proceedings of every other State.''

It is insisted that this means that this court is bound by the action of the Michigan court; that it is final and conclusive upon all officers and courts in the United States having or assuming jurisdiction or control over any of the assets of the estate of the deceased, and as a necessary consequence that it is my plain duty to make an order granting the prayer of the petition.

If I am bound by the adjudication of the Michigan court then my duty is simply to make an order accordingly. If I am not so bound, then I may still consider whether the allowances in question are a proper charge against this estate; whether they represent services and expenses incurred in aid of and beneficial to the probate and other proceedings in this estate. If they are for attorneys and other services in the probate of the will in the Michigan court or services in aid of the attempted transfer of the control of the estate to the latter court or in opposing the probate here or in aid of any of the attempted proceedings in this court which have failed, then I cannot allow them in whole or in part, because our Appellate Division has already held in this matter that I cannot allow for services of attorneys (especially foreign attorneys) in matters where they were not successful. At any rate, if I am to pass on the accounts (see 185 App. Div. 901) independent of the amounts allowed by the court in Michigan, I would require proofs as to the nature and character of the services and expenses claimed.

It may be claimed that the proceedings for the probate of the will in Michigan were successful. So they were from that viewpoint, but they produced a result at variance with and in hostility to all that has been

established here and hence the services in that behalf
cannot from our point of view be said to have been
rendered for the benefit of the estate. It follows that
as the matter now stands, I cannot allow for the serv-
ices and expenses claimed, unless, as stated, I am
bound by the judgment and decree of the Washtenaw
County Circuit Court.

Although the petitioners have made quite an exten-
sive argument and submitted a brief upon this point,
still no adjudicated case has been cited holding or
even bearing upon this contention. Many cases have
been cited in favor of the alleged dominancy of the
Michigan administration, upon the law of the domicile
as applied to administrations, but as that proposition
has long since been settled against the petitioners, I
do not see that it has any bearing on the present
question.

On the other hand, the Supreme Court of the United
States has held (*Pennoyer* v. *Neff*, 95 U. S. 722, cited
in *Brown* v. *Fletcher's Estate*, 210 id. 90) that every
state possesses exclusive jurisdiction and sovereignty
over persons and property within its territory and
that no state can exercise direct jurisdiction and
authority over persons or property without its
territory.

" The several states are of equal dignity and
authority, and the independence of one implies the
exclusion of powers from all others. And so it is
laid down by jurists as an elementary principle, that
the laws of one State have no operation outside of its
territory, except so far as is allowed by comity; and
that no tribunal established by it can extend its
process beyond that territory so as to subject either
persons or property to its decisions.

"Any exertion of authority of this sort beyond this
limit is a mere nullity and incapable of binding such

persons or property in any other tribunals." Story Confl. Laws, § 539.

*Brown* v. *Fletcher's Estate, supra,* was a case where the executor resided in Michigan, holding his appointment and acting under the courts of that state, where the principal estate was, and there was an administrator with the will annexed in Massachusetts acting under appointment of a court of that state, where some of the property was situated. A judgment of the Massachusetts court against the executor in Michigan was held to be a nullity, the court among other things holding that there was no such relation between an executor and an administrator with the will annexed, appointed in another state, as will make a decree against the latter binding upon the former or the estate in his possession. It is true that the court in this case commented on the fact that there was no valid or binding service of process on the executor, but the decision was based on the broader ground that the Massachusetts court could not by its judgment or decree bind or control property in the control of an executor in another state, acting under the authority of the courts of that state. The court quoted quite extensively from *Low* v. *Bartlett,* 8 Allen (Mass.), 259, where a judgment had been rendered in Vermont against an ancillary administrator appointed in that state, whose appointment had been made at the request of the executor under the will probated in Massachusetts, and it was held that the administrator was not in privity with the executor, because the two were administering two separate and distinct estates.

The court in the Massachusetts case, among other things, said: " If we look at the question of privity between the executor here and the ancillary administrator in Vermont, it is difficult to find any valid ground

on which such privity can rest. The executor derives his authority from the letters testamentary issued by the probate court here; he gives bond to that court; is accountable to it for all his proceedings; makes his final settlement in it, and is discharged by it, in conformity with the statutes of this commonwealth. The administrator derives his authority from the probate court in Vermont, and is accountable to it in the same manner in which the executor is accountable to our court. The authority of the executor does not extend to the property there, nor to the doings of the administrator. Nor does the authority of the administrator extend to the property here, or to the doings of the executor. When the plaintiff commenced his suit against the administrator, the executor had no right to go there and defend it. If he had been found in Vermont, he could not have been sued there. The judgment rendered in the suit was not against him, or against the testator's goods in his hands; but was simply against the administrator and the testator's goods in his hands. The courts of Vermont had no jurisdiction of the executor or of the goods in his hands, any more than our courts would have over the administrator and the goods in his hands. It is this limitation of state jurisdiction that creates a necessity for an administration in every state where a deceased person leaves property; and each state regulates for itself exclusively the manner in which the estate found within its limits shall be settled.''

All of which might be said of and is applicable to the question raised by the petition herein. If the Michigan court can make a decree binding upon this court and the administrator here or the property in his hands here, then this court can make decrees binding upon the Probate Court in Michigan, and the administrator there and the property in his hands in

Surrogate's Court, Madison County, September, 1919.    [Vol. 108.

'that state. In which case, as we are admonished by the history of this estate, the conflict of laws, decisions and decrees might furnish a modern counterpart to the story of the confusion of tongues at the building of the Tower of Babel.

While the decree of the Probate Court of Washtenaw county recites due citation of all persons interested in the estate to appear at the hearing, it does not appear in what manner they were cited, and in view of the authorities I do not think it is material. But if material, I should require proof of the manner of service and where the citation was served on the executor. He was a resident of this state and in the absence of proof I should at least suspect that he was served in this state if he was personally served. If served in this state, or if the service was by publication or other method of substituted service, then I should on that ground alone hold the decree in question to be a nullity with respect to any person or property in this state.

The point is raised by the petitioners that the property in the hands of the administrators here, being in a sense intangible property, viz., stock certificates, bonds and paper securities and evidences of value, with perhaps some money, the same is to be deemed to have been in the hands of the testatrix at Ann Arbor at the time of her decease; that it should for that reason be regarded and treated as being in the city of Ann Arbor and consequently in the county of Washtenaw and in the jurisdiction of the Probate Court of that county.

In *State of Iowa* v. *Slimmer*, 248 U. S. 115, decided by the Supreme Court of the United States on December 9, 1918, a case where a resident of the state of Iowa had prior to his decease, and for the purpose of defrauding the state of Iowa of transfer taxes, placed

his property, consisting of promissory notes and a few liberty bonds, aggregating in value $550,000, in the hands of his son in Minnesota, the court held, citing *Overby* v. *Gordon,* 177 U. S. 214, that the same was property located in the state of Minnesota and that the probate courts of that state had jurisdiction to determine the domicile and to distribute the property according to the terms of the will.

Therefore, being satisfied that the decree of the Washtenaw Circuit Court is ineffectual as to property in the jurisdiction of this court, it not appearing that the claims allowed in that court are claims against the estate of Elizabeth S. Eaton, or that they represent services or expenses rendered and incurred for the benefit of the estate or in aid of its administration, the prayer of the petition for an order directing the payment of the amounts as allowed by the Michigan court must be denied, and the petition as a whole is dismissed.

Decreed accordingly.