In the Matter of the Estate of ELIZABETH S. EATON, Deceased.

Surrogate's Court, Madison County, September 9, 1925.

Wills — final accounting by administrator with will annexed — conflict of laws — testatrix died resident of Michigan — will and codicil were probated here — will alone was probated in Michigan — will provided for payment of $100 per month to one person for support of brother of testatrix, and codicil provided for payment of $75 per month to another person for same purpose — application by Michigan administrator to have fund turned over to him for distribution and to have ancillary letters issued to him — personal property in this State must be distributed according to law of this State and under provisions of will and codicil admitted to probate here — application by Michigan administrator denied.

Personal property in this State of a testatrix who died resident of Michigan, leaving a will and codicil which were admitted to probate in this State, although the will alone was admitted to probate in Michigan, must be administered according to the laws of this State and pursuant to the will and codicil as probated here.

Surrogate's Court, Madison County, September, 1925.        [Vol. 125

and the fact that the Michigan courts denied probate to the codicil is not controlling upon the courts of this State.

Accordingly, where it appears that the will of the testatrix devised $100 per month to a certain person for the support of her brother, and that a codicil revoking said provision devised $75 per month to another person for the same purpose, the courts of this State will administer the estate in that regard according to the provisions of the codicil which was admitted here as a valid part of the will, and, therefore, the application by the Michigan administrator on the final accounting of the New York administrator with the will annexed, for ancillary letters of administration, and for an order directing that the funds of the estate located here be turned over to him for distribution pursuant to the laws of Michigan, and under the will as there probated, is denied.

Petition by administrator with will annexed for final judicial settlement of its account.

*Coville & Santry,* for the administrator c. t. a.

*J. A. Johnson, C. A. Hitchcock, A. F. Freeman* and *Ralph Phelps,* for Willis L. Watkins, administrator c. t. a. in Michigan.

Senn, S.:

The Madison County Trust and Deposit Company, as administrator with the will annexed of Elizabeth S. Eaton, deceased, has filed its account, together with a petition for a final judicial settlement. The account as filed shows a balance on hand of $44,466.08, subject to the administrator's commissions and such allowances as may be made.

Willis L. Watkins, appearing herein, is the administrator with the will annexed of the will of said Elizabeth S. Eaton which was probated in Washtenaw county, Mich., the county of the testatrix's domicile.

Testatrix left a will and codicil which were duly probated in Madison county, where the bulk of her property, consisting of various bonds, certificates of stock and other securities, was located. The codicil made important changes in the will. In the Michigan courts the will was admitted to probate, but the codicil was denied probate on the ground that the testatrix was not of sound mind and testamentary capacity when she executed it.

Mr. Watkins now objects to the proposed distribution by the trust company, but asks that the distribution be made direct to him as administrator, the funds so paid over to be distributed pursuant to the laws of Michigan and under the will and decree as established and made in Washtenaw county.

He also asks that, if deemed necessary, ancillary letters of administration be granted him. All of these objections and requests are based on the alleged dominancy of the Michigan administration due to the testatrix's domicile in that State.

The history and facts of the case were quite fully set forth by me in *Matter of Eaton* (102 Misc. 370), and may, therefore, in some respects be more briefly summarized here.

Testatrix died at Ann Arbor, Mich., on May 17, 1906.    Her will and codicil were probated in Madison county, N. Y., on November 12, 1906.    Her will, without the codicil, was probated in Michigan on December 1, 1908, and letters thereon granted to Mr. Watkins.

The will, as probated in Michigan, gave to Mrs. Susan C. Higgins (then Storms), a legacy or annuity of $100 per month during her lifetime, provided she made a home and cared for testatrix's mute brother, George A. Storms, during his lifetime. The codicil gave testatrix's sister, Genevieve S. Jacobs, and husband the sum of $75 per month during the lifetime of said mute brother if, during that time, they cared for and furnished him with a home as by the codicil they were requested to do.

Pursuant to the will and codicil in New York, the executor was paying $75 per month to the Jacobs for the support of the mute who was living with them.    Thereupon Mrs. Higgins brought suit by bill in equity in the Circuit Court for the Northern District of New York to have it adjudicated that she had a right to have the $100 per month paid to her pursuant to the will.    On April 19, 1910, her bill was dismissed (*Higgins* v. *Eaton*, 178 Fed. 153), Judge HAND holding that as to the assets actually in New York no law applies but the law of New York; that the codicil must be assumed to be valid and that construing it with the will, the result was to give the mute brother the choice of living with either the complainant or the Jacobs, and that if he chose one the other could get nothing.

Judge HAND's decision was reversed by tne Circuit Court of Appeals (183 Fed. 388), holding that the will must be executed according to the law of the domicile.

Thereupon the case was again heard in the Circuit Court (See 188 Fed. 938), and Judge RAY held in harmony with the decision of the Circuit Court of Appeals that the will must be executed as probated in Michigan and according to the laws of that State. He also held that at any rate, even assuming the codicil to be in force, Mrs. Higgins was entitled to be paid the $100 per month as long as she stood ready and willing to comply with the terms of the will in regard to the mute brother, even though the Jacobs might also be entitled to be paid for his care and maintenance. This decision was reversed by the Circuit Court of Appeals (202 Fed. 75), and the cause remanded with instructions to dismiss the bill.    Thereby the court also reversed its prior decision in the same case.    Among other things the court said: " Every State

has, as an incident to sovereignty, the power to establish and to regulate the succession of all property, real or personal, movable or immovable, within its territory. The only limit upon its authority is the capacity to make its laws effective. State laws conferring upon State courts power to admit to probate wills of non-residents as affecting local personal property are well within the power of the State. * * * There is no question in the case about the Michigan decree. So far as there may be property in Michigan that decree determined its disposition. So far as there may be property in other States which recognize the law of the domicile, that decree will likewise control. But so far as the New York assets are concerned, the New York decree controls and in this suit against the New York executor that decree determines his duties."

On December 16, 1912, Hon. MICHAEL H. KILEY, then surrogate of the county of Madison, filed an opinion in a proceeding then pending in this estate in which it was among other things sought to compel Hervey E. Eaton, as executor, to pay over to Susan C. Higgins her legacy under the will of Elizabeth S. Eaton and to turn over to Willis L. Watkins, the Michigan administrator c. t. a., the assets remaining in his hands. The proceeding was primarily to effect the execution of the decree of Judge RAY (188 Fed. 938). Judge KILEY refused to turn over the assets to the Michigan administrator and in this regard his decision was affirmed on appeal. (*Matter of Eaton*, 159 App. Div. 7.)

Subsequently application for ancillary letters of administration was made to the present surrogate by Willis L. Watkins, the Michigan administrator. This was denied by me (See 102 Misc. 370), and the decision affirmed by the Appellate Division (See 186 App. Div. 925).

From the foregoing it will be seen that there are now two principal administrations of this estate, one under the will as probated in Michigan and one under the will and codicil as probated in this State. It is plain that the will and codicil taken together are inconsistent with the will alone.

Under all the adjudications that have been made in regard to this estate, especially in *Higgins* v. *Eaton* (202 Fed. 75), the personal property in the State of New York must be administered according to the laws of this State and pursuant to the will and codicil as probated in Madison county.

Unless it is required by law, there are very important reasons why this estate should not now be transferred to Washtenaw county, Mich., for administration there. To do so would necessarily greatly deplete the estate. Claims which are invalid here would be valid there. This is especially true in regard to the claims for

support of George A. Storms. The Jacobs have already been paid for such support, in accordance with the codicil. In Michigan Mrs. Higgins or her estate would be entitled to be paid $100 per month during her own lifetime, provided she at all times stood ready to support and care for said mute brother, so that two persons or estates would receive pay for the same service.

I agree with counsel that this should not stand in the way of such disposition if the law clearly requires it, for then it would not be for this court to consider the consequences.

But I really see no reason why the previous decisions should be departed from.

Counsel for Mr. Watkins call attention to the language of Judge KILEY in his opinion of December, 1912, wherein he refused to then order the transfer of the assets to the Michigan administration, but in which he says: " It will be noticed that this will creates a trust, testatrix selecting her trustee, and that but a very small part of the estate can be distributed until the death of Susan C. Higgins Storms and George Albert Storms. Up to that time the care only of George Albert Storms by monthly payments requires the attention of the executor. When the time comes to distribute this estate to the legatees, I have no doubt that the court might then be induced to transmit this property for its distribution to the court of the domicile."

Counsel for Mr. Watkins contend that this was a determination by Judge KILEY that the final distribution would be made through the court of the domicile and, therefore, *res adjudicata*. I do not think so. The words were obiter, not referring to any situation then before the court, but rather to one that might or would in due time arise. I do not think that Judge KILEY intended the language to have the force of an adjudication in that regard.

Neither can the words quoted from Judge KILEY be deemed to be the matured opinion of that very able jurist, for they were written in the light of the decision of the United States Circuit Court of Appeals, as reported at 183 Federal, 388, and the opinion of Judge RAY at 188 Federal, 938, before its reversal by the Circuit Court of Appeals (202 Fed. 75), as well as the determination of the latter court not to adhere to its previous holding in that regard.

All things considered, I see no reason for changing my previous holdings in regard to the matters in controversy. Therefore, the objections of Willis L. Watkins, as administrator c. t. a. under the Michigan probate, must be dismissed and the application for ancillary letters to be issued to him, as well as the application to have distribution of the estate made direct to him, must be denied.

Decree to be prepared accordingly.